574 So.2d 1234 (1991)
Louis L. HEARTY, et al.
v.
Russlane HARRIS, et al.
No. 90-C-0937.
Supreme Court of Louisiana.
January 28, 1991.
Bradford R. Roberts, II, Michael E. Botnick, for Louis L. Hearty & Leo R. Bias plaintiff-applicant.
*1235 James L. Donovan, Jr., Donovan & Lawlwer, for Diversified Services Inc. d/b/a Budget Rent A Car of N.O. defendant-respondent.
COLE, Justice.
The issue in this case is whether a self-insured rental car agency, which enters into a rental agreement insuring against liability only the renter and one named additional driver, is mandated by public policy to provide omnibus coverage insuring other persons using the vehicle with the express or implied permission of the renter. Plaintiffs seek to assess liability for damages arising out of an accident involving a driver not named in the agreement.

I. Facts and Procedural History
On October 13, 1986, Nathaniel E. Willis rented an automobile from Budget Rent-A-Car. Budget's vehicles are self-insured in accordance with La.R.S. 32:1042. The rental agreement listed Willis as the "Renter" and Gerald Elwood as an "Additional Driver." Both Willis and Elwood signed the agreement which provided:
USE OF RENTED VEHICLE BY DRIVER OTHER THAN ONE SPECIFICALY QUALIFIED AND IDENTIFIED ON THIS CONTRACT WILL CANCEL AND TERMINATE INSURANCE COVERAGE; AND IN THE EVENT OF DAMAGE TO RENTED VEHICLE, OTHER PERSONS, OR PROPERTY, THE RENTER WILL BECOME LIABLE TO BUDGET/SEARS RENT A CAR FOR ALL COST, EXPENSES, CLAIMS, LOSSES AND ATTORNEY'S FEES.
The back of the agreement provided in pertinent part as follows:
2. The following restrictions are cumulative and each shall apply to every use, operation or driving of vehicle. Under no circumstances shall vehicle be used, operated or driven by any person:

* * * * * *
(g) By any person other than (1) the Renter who signed this agreement, or (2) any additional driver who signed this agreement.

* * * * * *
7. BUDGET/SEARS agrees to provide to the renter, and additional driver, liability coverage within limits of liability equal to the minimum limits required by the compulsory motor vehicle liability security law, (or so called `financial responsibility law') of the state in which the vehicle is rented. As a condition for this coverage, Renter and driver agree to comply with, and be bound by, all terms, conditions, limitations, and restrictions related to said coverage.... The insurance coverage referred to in this paragraph 7 does not apply:

* * * * * *
(e) While said vehicle is used, driven or operated in violation of the provisions of paragraph 2 ... (g), hereof. This paragraph 7 constitutes the entire agreement between BUDGET/SEARS and the Renter and driver regarding the terms and conditions of the insurance provided by BUDGET/SEARS to the Renter and driver and no alteration thereof shall be valid unless agreed to by BUDGET/SEARS, in writing. If any provisions of this paragraph shall be found to be unlawful, unenforceable, or contrary to public policy, then that portion of this paragraph which is unlawful, or unenforceable, or contrary to public policy shall be modified to provide the minimum amount of insurance coverage necessary to comply with the law or public policy, and the remainder of this paragraph shall remain in full force and effect.
On October 20, 1986, the vehicle in which the plaintiffs, Louis L. Hearty and Leo R. Bias, were traveling was struck by the leased vehicle. At the time of the accident, the rental car was driven and solely occupied by the defendant, Russlane Harris. The plaintiffs filed suit against Harris, Elwood,[1] and Budget. Specifically, the plaintiffs *1236 alleged Harris was operating the vehicle with the express and/or implied permission of the vehicle's owner and/or lessee.
Budget filed a motion for summary judgment based on the provisions in the rental agreement which provided for termination and cancellation of liability insurance coverage if the vehicle was driven by any person not specified as a renter or additional driver. The trial court heard the motion on April 7, 1989 and granted summary judgment dismissing the plaintiffs' claims against Budget on April 20, 1989.
The Court of Appeal, Fourth Circuit, affirmed. Hearty v. Harris, 559 So.2d 884 (La.App. 4th Cir. 1990). The appellate court found the omnibus-insured analysis, used in previous cases in which coverage had been found to exist despite provisions in the rental agreement which prohibited operation of a leased vehicle by an unauthorized driver, was inapplicable in the instant case. The Fourth Circuit distinguished the prior cases because Budget was self-insured.[2] Additionally, the appellate court found the prohibitory language in the rental agreement to clearly evidence the lack of permission on the part of Budget for Harris to operate the vehicle. Although the Fourth Circuit recognized the plaintiffs' allegation of an employer-employee relationship between Willis and Harris, the court refused to consider this allegation because the amended petition was not filed until after the trial court had granted Budget's motion for summary judgment.[3]

II. Jurisprudential Background
In Normand v. Hertz Corp., 254 La. 1075, 229 So.2d 104 (1969), we concluded an omnibus clause in Hertz's insurance policy did not apply to a driver who was not listed as a qualified driver in the rental agreement. However, in Jones v. Breaux, 289 So.2d 110 (La.1974), we overruled Normand, and held a non-named driver could fall under the omnibus clause in the rental agency's insurance policy under certain circumstances. In Jones, the rental car was operated by an unauthorized driver in violation of a provision in the lease agreement which prohibited use except by the lessee or others named in the agreement. We held the rental agreement, which limited the application of the omnibus insured clause contained in the lessor's insurance policy, changed the contract of insurance in violation of La.R.S. 22:628.[4] Thus, the lessor's policy, which included an omnibus clause, was found to supersede the provisions in the rental agreement which attempted to avoid liability arising from the unauthorized use of the car. We went on to find the unauthorized driver was covered under the omnibus clause because she had the lessee's permission to operate the vehicle.
We agree with the appellate court that the instant case is distinguishable from Jones. Obviously, the existence of the lessor's insurance policy in Jones played an important role in the outcome of the case, as the omnibus clause contained in the lessor's policy was the major reason behind the court's refusal to honor the prohibitory provisions in the rental agreement.[5] Thus, the Jones decision and its progeny provide little insight into this case involving a self-insured rental agency because there is no lessor's liability policy.
We add it is questionable whether the Jones holding is viable today because its reasoning is no longer accurate based on *1237 changes in the statutory law. The Court of Appeal, Third Circuit, in Whittington v. Sowela Technical Institute, 438 So.2d 236 (La.App. 3rd Cir.), writ denied, 443 So.2d 591 (La.1983), suggested the Jones holding was overruled by a 1977 amendment of La.R.S. 22:628 which allowed insurance contracts to incorporate by reference terms of another policy. Accordingly, the Whittington court enforced a provision in the rental agreement which limited liability coverage afforded by the lessor's insurer to the liability limits provided in the lessee's personal automobile liability insurance policy.
With the exception of Whittington, the appellate courts of this state have skirted the legal issue concerning the validity of unambiguous provisions in rental agreements which prohibit operation by unauthorized drivers. Instead, the lower courts have treated this legal issue as a factual one by enforcing specific prohibitions when the unauthorized driver operated the vehicle without the lessee's permission, while holding the same prohibitions unenforceable when the unauthorized driver had the lessee's implied or express permission to operate the vehicle.[6] Absent statutory regulations to the contrary, there would appear to be no basis for the lower courts' disregard of the unambiguous restrictive language in the rental contracts.

III. The Louisiana Motor Vehicle Safety Responsibility Law
A. The Nature of Self-insurance
Having concluded the prior jurisprudence involving the liability of rental agencies when the leased automobile is driven by an unauthorized driver in violation of the lease agreement offers us little guidance, a discussion of the nature of self-insurance under Louisiana law is necessary. The Louisiana Motor Vehicle Safety Responsibility Law[7] (LMVSRL) provides a mandatory, comprehensive scheme for the protection of the public from damage caused by motor vehicles. At the heart of this statutory scheme is the decision to attach the financial protection to the vehicle rather than to the operator.[8]
Pursuant to La.R.S. 32:861(A), the owner of every motor vehicle registered in the state of Louisiana (with the exception of certain classifications of vehicles) is prospectively required to maintain proof of financial responsibility by: (1) purchasing a motor vehicle liability policy with limits which conform to the requirements of La. R.S. 32:900(B)(2) or a binder for the same; (2) posting a motor vehicle liability bond which satisfies the requirements of La.R.S. 32:861(B); (3) depositing with the state treasurer sufficient cash and securities under the provisions of La.R.S. 32:861(C); or (4) obtaining a certificate of self-insurance in accordance with the terms of La.R.S. 32:1042.
It is important to understand that self-insurance is, in actuality, not insurance at all. It is merely one of the four methods by which an owner of a motor vehicle is allowed to meet the requirements of the LMVSRL. Pursuant to La.R.S. 32:1042, any person who is the registered owner of *1238 more than twenty-five motor vehicles or who owns an equity interest in Louisiana property having a value of one hundred thousand dollars or more, may qualify as a self-insurer by obtaining a certificate of self-insurance. Although self-insured vehicles are uninsured, the certificate of self-insurance indicates the self-insured is fiscally responsible and will pay damage claims and judgments involving its liability exposure.
While Louisiana courts have consistently recognized that a certificate of self-insurance indicates the self-insurer possesses sufficient assets to satisfy judgments if found legally liable, the courts have refused to consider a certificate of self-insurance an insurance "policy." Jones v. Henry, 542 So.2d 507, 509 (La. 1989) (self-insurers do not have to provide uninsured motorist coverage); Jordan v. Honea, 407 So.2d 503, 504 (La.App. 1st Cir.1981), writ denied, 409 So.2d 654 (La. 1982) (uninsured motorist coverage is required only if there is an insurance policy). Instead, the courts have treated each of the four methods listed above as a distinct means of establishing proof of financial responsibility.
B. Statutorily Required Omnibus Coverage
Under a provision commonly referred to as an "omnibus clause," insurance coverage may be extended to other persons who are using the insured vehicle with the insured's express or implied permission.[9] An omnibus clause is intended to extend liability beyond the law of principal and agent.[10] The Louisiana legislature requires a "Motor Vehicle Liability Policy," as defined, to include an omnibus clause which "insure[s] the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured...," subject to certain statutory limits. La.R.S. 32:900(B)(2).[11] Similarly, the provisions of La.R.S. 32:861(B) order a person who posts a motor vehicle liability bond to satisfy "[a]ll judgments rendered against him or against any person responsible for the operation of the obligor's motor vehicle with his express or implied consent..." for damages arising out of the ownership, maintenance, or use of such vehicle. Comparably, the payment of judgments which are secured by a deposit as provided by La.R.S. 32:861(C) "may be brought against the registrant or the person responsible for the operation of the registrant's motor vehicle with his express or implied consent ...". Thus, the legislature has treated each of the four methods of establishing proof of financial responsibility as distinct and separate by expressly stating the requirements for each method individually.
C. Extent of the Self-insurer's Liability
We find no provision in the LMVSRL which expressly requires a self-insured to be responsible for the actions of a person using the vehicle with the express or implied consent of the self-insured or the authorized driver(s). Had the legislature intended for self-insurers to provide omnibus coverage, it could easily have included a mandatory omnibus provision in La.R.S. 32:1042 which details the requirements and obligations of self-insurers. The failure of the legislature to prescribe omnibus liability for self-insurers, while specifically requiring policy holders and those who post security as proof of financial responsibility to provide omnibus coverage, evidences there is no legislative intent to require self-insurers to provide such coverage.[12]
*1239 Unless and until the legislature of this state specifically mandates that self-insurers provide omnibus liability on their vehicles, we will not require a self-insured to provide such coverage. To do so would be a usurpation of the legislative function and violative of the separation of powers doctrine. Consequently, we hold the LMVSRL does not compel Budget to provide omnibus coverage on its vehicles.

IV. Effect of the Rental Agreement Between Budget and the Lessee
Although our analysis supports the conclusion that Budget, as a self-insured, is not required to provide omnibus coverage, the plaintiffs contend Budget is required to provide omnibus coverage in its capacity as an automobile liability insurer. We agree with the plaintiffs that the lease agreement between Budget and the lessee clearly constitutes a contract to provide liability coverage.[13] However, an insurer has a right to restrict his liability unless such restriction conflicts with statutory requirements or is contrary to public policy. Pareti v. Sentry Indem. Co., 536 So.2d 417 (La. 1988); Oceanonics, Inc. v. Petroleum Distrib. Co., 292 So.2d 190 (La. 1974); Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 75 (1939).
A. Applicability of La.R.S. 32:900
The plaintiffs contend the prohibitory clauses contained in the Budget rental contract conflict with La.R.S. 32:900(B)(2), which mandates the inclusion of specific omnibus provisions in a "Motor Vehicle Liability Policy," as defined. For the following reasons, we find no merit in the plaintiffs' argument.
The plaintiffs fail to discern the distinction between a "motor vehicle liability policy" and an "automobile liability policy."[14] The term "motor vehicle liability policy" is defined by La.R.S. 32:900(A) as "an owner's or an operator's policy of liability insurance, certified as provided in R.S. 32:898 or 32:899 as proof of financial responsibility, and issued ... by an insurance carrier duly authorized to transact business in this state...." By purchasing a "motor vehicle liability policy" an owner or operator satisfies the requirements of the LMVSRL. In contrast, an "automobile liability policy" is a voluntary policy which has not been certified as proof of a motorist's financial responsibility and does not therefore satisfy the requirements of the LMVSRL.
A language of La.R.S. 32:900(B)(2) clearly indicates the mandatory omnibus clause requirement applies only when the liability policy in question is certified and used as proof of financial responsibility. New Zealand Ins. Co. v. Holloway, 123 F.Supp. 642 (W.D.La.1954); Gotreaux v. Travelers Ins. Co., 299 So.2d 466 (La.App. 3rd Cir.), writ denied, 302 So.2d 309 (La. 1974); Johnson v. Universal Automobile Ins. Ass'n, 124 So.2d 580 (La.App. 3rd Cir. 1960). La.R.S. 32:900(B)(2) does not affect the terms of a voluntary "automobile liability policy" which was not obtained to comply with the requirements of the LMVSRL.[15]
*1240 We believe La.R.S. 32:900(B)(2), which mandates the inclusion of omnibus coverage in all "motor vehicle liability policies," is not applicable to the lease agreement between Budget and the lessee.[16] At the crux of our determination is the idea that the insured/lessee is not the owner of the vehicle but is merely the operator. Unlike owners of motor vehicles, who are required to provide proof of financial responsibility prior to registration,[17] the LMVSRL does not require operators of motor vehicles to furnish evidence of financial responsibility prior to obtaining a driver's license. Proof of financial responsibility is required of operators only if a judgment against them arising out of a previous accident is unsatisfied or if they have been convicted of violating one of certain named offenses.[18] Thus, unless an insured operator has by previous conduct brought himself within the purview of the LMVSRL, he is not required to carry liability insurance, nor does any voluntary "automobile liability policy" which he may choose to purchase have to contain particular provisions required by La.R.S. 32:900.
Because there is no allegation of prior conduct which would have required the lessee to provide proof of financial responsibility under the LMVSRL, we find the contract of insurance between Budget and the lessee to be a voluntary "automobile liability policy" to which La.R.S. 32:900 has no application.[19]
Furthermore, the only means by which an insurance policy may serve as proof of financial responsibility sufficient to satisfy the requirements of the LMVSRL is when it has been officially certified and issued by an insurance carrier duly authorized to transact business in this state. The lease agreement provided by Budget was not certified as provided by La.R.S. 32:898 or 32:899 and was not intended to satisfy the requirements of the LMVSRL.
In support of their argument that La. R.S. 32:900(B)(2) mandates the inclusion of an omnibus clause in the lease agreement, the plaintiffs cite Jones v. King, 549 So.2d 350 (La.App. 5th Cir.1989) and Pollard v. Champion Ins. Co., 532 So.2d 838 (La.App. 4th Cir. 1988). In Jones and Pollard the appellate courts correctly held that the lease agreement, which provided liability insurance to the lessee, was deemed to provide uninsured motorist coverage because La.R.S. 22:1406(D) requires all "automobile liability policies" to include uninsured motorist coverage unless specifically rejected in writing. These cases are clearly distinguishable from the instant case because while La.R.S. 22:1406(D) requires the inclusion of UM coverage in every insurance policy written in the state, La.R.S. 32:900 requires the inclusion of an omnibus clause only in those policies used as proof of financial responsibility.
The plaintiffs also rely on an opinion of the Louisiana Attorney General[20] to buttress *1241 their argument that prohibitory clauses such as the one contained in the Budget rental contract restrict the required omnibus provisions of auto insurance policies written in Louisiana in violation of La.R.S. 32:900. Although the referenced opinion indicates all liability policies written in Louisiana are controlled by the statutory omnibus coverage provision contained in La.R.S. 32:900, we note the Attorney General based his opinion on Fields v. Western Preferred Casualty Co., 437 So.2d 344 (La.App. 2nd Cir.), writ denied, 440 So.2d 754 (La. 1983). In Fields, the court correctly distinguished between a compulsory liability policy required under the LMVSRL by La.R.S. 32:861 and a voluntary liability policy and held the statutory omnibus coverage provision of La.R.S. 32:900 would override or supersede a provision in a compulsory liability policy which excluded a named driver. Thus, because the Attorney General's opinion fails to make this distinction, it erroneously extends the holding of Fields beyond that intended by the Second Circuit Court of Appeal.
In conclusion, because the LMVSRL does not normally require the operator of a vehicle to carry public liability insurance, we find the contract of insurance between Budget and the lessee to be a voluntary "automobile liability policy" to which La. R.S. 32:900 has no application. Therefore, we hold the insurance coverage created by the lease agreement is not subject to the requirements of La.R.S. 32:900.[21]
B. Applicability of La.R.S. 22:655
We find the plaintiffs' argument that the Budget rental agreement should provide mandatory omnibus coverage to a permissive user pursuant to La.R.S. 22:655 equally unpersuasive.[22] La.R.S. 22:655, which sets forth the general requirements of liability policies delivered or issued in Louisiana, states in pertinent part:
[I]t is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy.
Our reading of the statute does not support the plaintiffs' allegation that La.R.S. 22:655 requires omnibus coverage in all liability policies written in Louisiana. The language of the statute merely promotes a broad interpretation of omnibus provisions if they are contained in a liability policy. La.R.S. 22:655 does not in any way mandate omnibus coverage in all liability policies.
Furthermore, the Louisiana jurisprudence has never indicated that La.R.S. 22:655 requires mandatory omnibus coverage in all liability policies. Indeed, the Fifth Circuit Court of Appeals in Jones v. Mid-South Ins. Co., 358 F.2d 887 (5th Cir. 1966), specifically held La.R.S. 22:655 does not imply a mandatory omnibus provision.
C. Public Policy Considerations
Absent an existing statutory provision mandating the inclusion of an omnibus clause in the insurance contract between Budget and the lessee, the issue becomes whether the provisions of the lease agreement, which attempt to terminate and cancel insurance coverage if the rented vehicle is operated by one not named in the agreement, *1242 are unenforceable as contrary to public policy.
Louisiana courts have consistently held exclusions of specific drivers in "automobile liability policies" are permitted and are not against public policy. Smith v. Western Preferred Casualty Co., 424 So.2d 375 (La.App. 2nd Cir. 1982), writ denied, 427 So.2d 1212 (La.1983); Hudson v. Thompson, 422 So.2d 640 (La.App. 3rd Cir. 1982); Washington v. Dixie Leasing of New Orleans, Inc., 352 So.2d 363 (La.App. 4th Cir.1977), writ denied, 354 So.2d 210 (La. 1978). Although we acknowledge that "automobile liability policies" are issued primarily for the protection of the public rather than the insured, it is not the public policy of this state to protect and provide compensation to injured persons at all times. Consequently, we believe it is not against public policy for an automobile rental agency to restrict liability coverage to certain named drivers. The agency has an interest in protecting its property and the right, as the owner of the vehicle, to impose restrictions on the operation and use of the vehicle. This comports with the freedom to contract[23] and the constitutional protection against the impairment of contracts.[24]

V. Statutory Exception for Owners Engaged in the Business of Renting Motor Vehicles
In addition to the above reasons, we note an additional justification for our conclusion that Budget should not be held liable in the instant case. In enacting the LMVSRL the legislature, apparently recognizing the unique nature of rental car agencies, specifically stated in La.R.S. 32:1041 that vehicle owners "engaged in the business of renting or leasing motor vehicles" are not required to furnish proof of financial responsibility to satisfy any judgment entered against their lessees.[25] This statute makes it clear that the legislature did not intend rental agencies to bear the financial responsibility for the negligent actions of a lessee operating the leased vehicle in accordance with the terms of the lease. A fortiori, a rental agency, such as Budget in the instant case, should not be financially responsible for the negligent operation of its vehicle in violation of the express terms of the lease agreement.

VI. Conclusion
In the absence of statutory regulation to the contrary and in consideration of the express exception to the LMVSRL created for rental agencies, we find no reason to disregard the unambiguous provisions in Budget's rental agreement which terminate insurance coverage when the vehicle is operated by one other than the renter or additional driver named on the agreement. Accordingly, the summary judgment granted in favor of Budget Rent-A-Car is affirmed.
AFFIRMED.
CALOGERO, J., concurs and assigns.
DENNIS, J., dissents with reasons.
LEMMON, J., dissents and assigns reasons.
WATSON, J., dissents, assigns reasons and also joins in the reasons assigned by DENNIS, J.
*1243 CALOGERO, Chief Justice, concurring.
Were it not for the Legislature's expression in LSA-R.S. 32:1041, I would be inclined to join my dissenting brother who believes that it is against public policy to allow a self-insured car rental agency to place vehicles on the streets and highways, without liability coverage for lessees or alternately without liability for undesignated permissive users, by utilizing the privilege afforded self-insurers under the Safety Responsibility Law. However, the Legislature has specifically sanctioned that in LSA-R.S. 32:1041, which provides that a motor vehicle leasing company need only furnish proof of financial ability to satisfy judgments against them in their capacity as owner of the vehicles, and shall not be required to furnish proof of financial ability to satisfy judgments rendered against the vehicle lessees.[1]
I am also concerned about this unregulated company engaging in the sale of what is essentially automobile liability insurance, without having their policy filed with and approved by the commissioner of insurance, see LSA-R.S. 22:620, and without including an omnibus clause, which I suspect is to be found in most, if not all, liability insurance policies issued by authorized insurance carriers. However, I simply cannot find a legal basis on which to compel judicially a revision to Budget's policy.[2] The assessment and reasons expressed by the majority opinion are sound, and I subscribe to them.
The Legislature saw fit in 1989 to pass an Act regarding collision damage waivers, which are contractual provisions found in motor vehicle rental agreements whereby the lessor agrees for a charge to waive any and all claims against the lessee for any damages to the rental vehicle during the term of the rental agreement. See LSA-R.S. §§ 22:2091.1-2091.10 (West Supp.1990) (added by Acts 1989, No. 773, § 2, eff. Jan. 1, 1990). While the collision damage waiver portion of the rental agreement is not to be considered insurance (according to section R.S. 2091.2), a motor vehicle rental agreement containing such a provision cannot be issued unless filed with, and not disapproved by, the commissioner of insurance. See LSA-R.S. 22:2091.5.
On the other hand, the Legislature has not addressed liability insurance coverage, which is also offered by car rental companies. In my view the Legislature should consider requiring such policies, as well as those policies offered by authorized insurance carriers, to carry omnibus coverage. However, the formulation of public policy is for the Legislature, not the courts. Accordingly, I concur in the majority opinion.
DENNIS, Justice, dissenting.
I respectfully dissent.
The legislature under its power to control and regulate travel on the public highways and to provide for public safety by reasonable regulations of dangerous undertakings has enacted a statute which requires that the owner of every motor vehicle, before it is allowed to be registered for use on the highways, must give security for the discharge in liability in damages for injuries to person or property caused by the faulty operation of the motor vehicle by taking out a policy of motor vehicle liability insurance, or by depositing cash, bond or other securities, or by becoming certified as a self-insurer. La.R.S. 32:861 et seq. This statute is known as the Compulsory Motor Vehicle Liability Security Law or the *1244 Compulsory Liability Insurance Law. La. R.S. 32:861 et seq. It is recognized generally that a compulsory motor vehicle liability insurance statute is a remedial statute and is to be liberally construed to suppress the mischief intended to be put down and to advance the remedy which it was intended to afford. American Underwriters, Inc. v. Curtis, 427 N.E.2d 438, 442 (Ind. 1981); Moore v. Hartford Fire Ins. Co., 270 N.C. 532, 155 S.E.2d 128 (1967); Desmarais v. Standard Acc. Ins. Co., 331 Mass. 199, 118 N.E.2d 86, 88 (1954); Couch on Insurance 2d (Rev. ed.) § 692. The purpose of such a statute is not like ordinary insurance to protect the motor vehicle owner or operator alone from loss, but fundamentally or primarily is to provide compensation for innocent persons who suffer injuries through the faulty operation of the motor vehicle. Fields v. Western Preferred Casualty Co., 437 So.2d 344 (La. App. 2d Cir.), writ denied 440 So.2d 528, 754 (La. 1983); Argenzio v. Aetna Casualty and Surety Co., 65 Misc.2d 813, 318 N.Y.S.2d 64 (1971); Ferguson v. Employers Mutual Casualty Co., 254 S.C. 235, 174 S.E.2d 768 (1970); Canavan v. Hanover Ins. Co., 356 Mass. 88, 248 N.E.2d 271 (1969).
A basic fault running through the plurality and concurring opinions is the failure to distinguish between the statutory provisions resulting from the enactment of the Compulsory Motor Vehicle Liability Insurance Law, La.R.S. 32:861-32:864 (Act 115 of 1977), and the provisions originally enacted as the Motor Vehicle Safety Responsibility Act, La.R.S. 32:851-32:858; 32:871-32:1043 (Act 52 of 1952). The two acts differ markedly in their scope, objectives and means of accomplishing their ends. The purpose of the Safety Responsibility Act is to require that the operator of each motor vehicle involved in an accident resulting in death, personal injury or property damage of a certain magnitude report the accident, deposit security for the satisfaction of any judgment and file proof of his financial responsibility for the future. On the other hand, the object of the Compulsory Insurance Law is in essence to require that all self propelled motor vehicles registered for operation on the highways and roads of this state must be covered by liability insurance or other security. Although the Compulsory Insurance Law requires that each liability policy issued on registered vehicles have the same liability limits as defined by the earlier Safety Responsibility Act in its requirement of proof of financial responsibility after an accident, the Compulsory Insurance Law's substantive provisions are otherwise a separate and independent enactment.
Our brethren's failure to notice the difference between the statutes has led them into serious error. R.S. 32:1041 does not exempt motor vehicle leasing companies from the requirements of the Compulsory Insurance Law as they assume. R.S. 32:1041 was enacted as part of the Safety Responsibility Act in 1952 and has since remained unchanged. Therefore, R.S. 32:1041 clearly has no reference to or effect upon the Compulsory Insurance Law which was not enacted until a quarter century later in 1977. The wording of R.S. 32:1041 further bears this out by providing that motor leasing companies "shall only be required to furnish proof of financial ability to satisfy any judgment [against such a company] and shall not be required to furnish proof of its financial ability to satisfy any judgment [against its lessees]." Id. The term "proof of financial ability to satisfy any judgment" plainly refers to the concept of the Safety Responsibility Act and its provision requiring security and proof of financial responsibility for judgment after a motor vehicle is involved in an accident causing death, personal injury or property damage of a certain amount. R.S. 32:871 et seq. Since the Compulsory Insurance Law is not couched in these terms and was not in existence at the time R.S. 32:1041 was enacted, there evidently was no legislative aim to enact a law affecting compulsory insurance in 1952. Since the author of the concurring opinion believes the plurality's result is unjust and feels compelled to concur only by R.S. 32:1041, I respectfully urge and request a reexamination of that conclusion in light of the very clear legislative history demonstrating *1245 that R.S. 32:1041 is irrelevant to the present case.
Under the Compulsory Liability Insurance Law, if access to use of the highways of this state by a motor vehicle is gained by the issuance of a policy of liability insurance covering the vehicle, that policy is required to contain certain minimum coverages specified by law. La.R.S. 32:861. Insurers, who are charged with knowledge of these minimum requirements, are conclusively presumed to consent to the incorporation of the statutory threshold terms into their policies when they issue liability insurance. Fields v. Western Preferred Casualty Co., 437 So.2d 344 (La.App. 2d Cir.), writ denied 440 So.2d 528, 754 (La.1983); Stanfel v. Shelton, 563 So.2d 410 (La.App. 1st Cir. 1990); Rudison v. Richard, 526 So.2d 369 (La.App. 4th Cir.1988). "An insurer is not at liberty to limit its liability and imposed conditions upon its obligations that conflict with statutory law or public policy." Block v. Reliance Ins. Co., 433 So.2d 1040 (La.1983); Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72 (1939).
In particular, the compulsory motor vehicle liability security law, in R.S. 32:861(A)(1), provides that if a motor vehicle is covered by a liability insurance policy, that policy must be an insurance contract with minimum liability limits as defined by R.S. 32:900(B)(2). Among other provisions, R.S. 32:900(B)(2) defines the minimum limits of liability and coverage by confining insurance to the coverage of the "person named" in the policy "and any other person, as insured, using any such motor vehicle ... with the implied permission of such named insured." This type of policy provision, which extends coverage to persons or entities not named as insureds, is commonly referred to as an "omnibus" clause. Among several types of omnibus clauses in use currently, this statutorily defined clause is neither the narrowest nor the broadest. See 1 Rowland H. Long, The Law of Liability Insurance § 3.02. Thus, the statutorily prescribed omnibus clause serves to define the limits that may be placed on the insurer's liability with respect to operation of the vehicle by persons other than the named insured.
The liability insurance contract issued by Budget in the present case does not contain the minimum omnibus provision required by law under which the policy covers as an insured not only the named insured but also anyone using the vehicle with the named insured's permission. On the contrary, the Budget policy contains a provision diametrically opposed to the statutorily prescribed omnibus clause. Thus, the Budget insurance contract is an obvious attempt to issue liability insurance without the minimum coverages specified by law. Consequently, that policy provision must be disregarded as in conflict with legal requirements and the minimum statutory omnibus clause must be deemed by law to be incorporated into Budget's policy.
Budget contends that the fact that it holds a certificate of self-insurance somehow exempts its liability insurance policy from the requirements of law. The contention is without merit. The certificate authorizes Budget's own use of the highways with its vehicles without obtaining insurance but it does not authorize Budget to permit other legally separate entities or persons to use the vehicles without insurance containing the minimum coverages required by law.
"Self insurance" does not involve the issuance of insurance at all. It is really a technique of risk management by which assets are set aside to meet future losses. Thus, it is more appropriately characterized as "risk retention." See Keeton and Widiss, Insurance Law: A Guide to Fundamental Principles, Legal Docterines and Commercial Practices, § 1.3 at p. 14 (1988) [hereinafter "Keeton and Widiss" ]. Thus, as an exception to the requirement of liability insurance or other liability security, R.S. 32:861 permits an entity of a certain magnitude and character to handle the risk of its operation of its vehicles by "setting aside" assetseither by accounting entries or by actually establishing a special fund from which it will pay such claims, rather than by purchasing insurance. See Keeton and Widiss, § 1.3 at p. 13.
*1246 Since "self insurance" is an exception to the general rule of requiring liability insurance or security in furtherance of the public policy promoting safe and responsible motor vehicle operation, the provisions for "self insurance" or "risk retention" should be strictly construed. Clearly, an entity must demonstrate that it has set aside assets to handle the risk of its own operation of its vehicles before it may avoid purchasing liability insurance or security. By the same token, the self-insurance or risk retention permit does not authorize the entity to assume any risks beyond those created by its own vehicle operations for which it has set aside assets to handle.
Budget's issuance of liability insurance to one of its lessees is not merely a retention of its own risk for which it has set aside assets. It is in reality part of a separate insurance enterprise whereby the risks created by other parties, the lessees, are transferred to Budget acting as an insurance company. Thus, the contracts of insurance entered by Budget are governed by the liability security requirements of R.S. 32:861 just as are other insurance policies which serve as the statutorily required liability security for a Louisiana vehicle. See Fields v. Western Preferred Casualty Co., 437 So.2d 344, 346-47 (La.App. 2d Cir.), writ denied 440 So.2d 528, 754 (La. 1983) ("If a policy of liability insurance is written on a Louisiana motor vehicle, the minimal liability coverage is controlled by the statute and the statutory omnibus coverage provision will override or supercede a policy provision or endorsement excluding a named driver."); Boudreaux v. ABC Ins. Co., 689 F.2d 1256, 1260 (5th Cir.1982) ("[A]n omnibus clause is part of the `standard liability coverage' in Louisiana as defined by the Louisiana Code."). As a result, the compulsory liability security law required that this policy provide coverage to persons operating the Budget vehicle with the express or implied permission of Harris, the insured lessee. Any provisions of the rental agreement/insurance policy attempting to limit this statutorily required omnibus coverage are without effect.
The plurality and concurring opinions represent major setbacks to the development of a coherent and effective compulsory insurance law and policy. The view of the concurring opinion is the most damaging if it should gain acceptance. Under its author's interpretation, the compulsory insurance law does not require any insurer to include an omnibus clause in any liability insurance policy. In this regard, the concurring opinion stands alone and parts company with the plurality and all other authority. Rudison v. Richard, 526 So.2d 369 (La.App. 4th Cir. 1988); Clarice v. Progressive America Ins. Co., 469 So.2d 319 (La.App. 2d Cir.1985); Fields v. Western Preferred Casualty Co., 437 So.2d 344 (La. App. 2d Cir.), writ denied 440 So.2d 528, 754 (La.1983); Boudreaux v. ABC Ins. Co., 689 F.2d 1256 (5th Cir.1982); Op.Atty.Gen., No. 78-875 (Dec. 5, 1978). It is difficult to believe that the legislature would have allowed the interpretation of these authorities to continue for so long if it had intended the effect of the compulsory insurance law to be as narrow as the concurrence asserts.
The plurality opinion, on the other hand, while conceding that the compulsory insurance law requires that, in general, liability insurance policies must contain the statutorily prescribed omnibus clause, nevertheless takes the position that liability insurance policies issued by self insurers are totally exempt from the minimum requirements of that law. This partially mistaken interpretation results from the plurality's confusion on two points: first, its misguided but abiding assumption that self-insurance is a form of insurancedespite the disavowal of such a belief in its opinion; and, second, its failure to recognize that when a self-insurer agrees to insure a third person against liability the self-insurer steps out of the role of self-insurer and into that of an insurer. The plurality bases its view principally on the fact that the statutes do not include a mandatory omnibus provision in the requirements and obligations of self-insurers. The plurality asserts that this shows "there is no legislative intent to require self-insurers to provide such coverage." But there is the rub. Self-insurers as such do not provide any *1247 coverage or any insurance to any one. A self-insurer is simply a person who enjoys the privilege of retaining and managing his own liability risks instead of being compelled to purchase liability insurance or to post liability security. Therefore, the reason the statute does not require self-insurers to assume risks similar to those required of omnibus insurers is because self-insurers as such are not in the insurance business and are not customarily liable for damage other than that caused by themselves, their servants and their things. Moreover, the plurality fails to recognize that a certificate of self-insurance merely allows a person to retain his own risks, i.e., to avoid buying insurance and to refrain from transferring his own risks to an insurer, and that the purpose of such a certificate is not to relieve him from the laws and regulations governing the issuance of liability insurance and the underwriting of the risks of others should he choose to engage in that activity.
Conscious of the weakness of its arguments based on the self-insured status of Budget, the plurality presents an alternative argument based on a perceived distinction between a "motor vehicle liability policy" and an "automobile liability policy". Because the argument is subtle and complex, indeed somewhat gossamer, it is difficult to follow and hard to summarize briefly. Suffice it to say, however, that the argument is invalid because the distinction between automobile and motor vehicle liability policies seems to be important only when a party seeks to bar an insurer from asserting an insured's breach of a policy condition as a defense because the policy has been certified under a financial responsibility provision. In such cases, some courts have dubbed policies that have been certified as proof of a motorist's financial responsibility for the future, following his involvement in an accident, as "motor vehicle liability policies" to distinguish them from "automobile liability policies" which have not been so certified. These courts have held that the official certification of a liability policy as proof of a motorist's financial responsibility bars the insurer from asserting an insured's breach of a policy condition as a defense. See the commentary cited by the plurality: Comment, Compensation for Motor Vehicle Accident Victims: The Louisiana Motor Vehicle Safety Responsibility Act, 27 Tul.L.Rev. 341, 350 (1953). Because no one in the present case has alleged that the liability policy had been certified as proof of anyone's financial responsibility following a previous accident and no one has contended that the insured breached a policy condition, the classification of the policy as one kind or the other seems totally irrelevant. Indeed, it is difficult to understand why the plurality thinks that this argument supports its position. Near the end of its discussion, the plurality does give a clue when it asserts that it "finds the contract of insurance between Budget and the lessee to be a voluntary `automobile liability policy' to which La.R.S. 32:900 has no application." But the fact that the contract between Budget and the lessee was an `automobile liability policy' actually supports rather than contravenes the thesis of this dissenting opinion. For the Compulsory Insurance Law, which is directly applicable to this case, clearly provides that every self-propelled motor vehicle registered for use on the highways "shall be covered by an automobile liability policy wilth liability limits as defined by R.S. 32:900(B)(2)" or other security. R.S. 32:861(A)(1) (Emphasis added). Moreover, the fact that financial responsibility provisions, such as R.S. 32:900, that come into play only after an automobile accident of a certain statutorily prescribed nature, have no direct application to this case does not defeat the plaintiffs' cause. Even though the financial responsibility provisions of R.S. 32:900 have no direct or independent application in this compulsory insurance case, the legislature can and has incorporated the liability limits defined by R.S. 32:900(B)(2) by reference in regulating automobile liability policies under the Compulsory Insurance Law, R.S. 32:861-32:865 (Act 115 of 1977), that clearly is directly applicable here.
Ultimately, this is a simple case. The laws pertaining to self-insurance are not applicable because the risk created by the *1248 lessee's operation was not a risk Budget was authorized to retain and manage under its self-insurance certificate. The laws pertaining to proof of financial responsibility are not directly or independently applicable because there is no contention that the policy had been certified as proof of financial responsibility following a prior accident. The Compulsory Insurance Law is applicable because the vehicle was being operated pursuant to an automobile liability insurance policy. However, that policy did not comply with the minimum requirements of coverage and limitations of liability set forth in the Compulsory Insurance Law. Consequently, the policy's attempt to impose a limitation on the insurer's liability more restrictive than that contained in the statutorily prescribed omnibus provision is contrary to law and must be disregarded. Instead, Budget, the insurer, who issued liability insurance in this state presumably with knowledge of the minimum requirements for such insurance, must be deemed to have consented to the inclusion of the statutorily required omnibus clause in its insurance policy.
WATSON, Justice, dissenting.
The majority errs in holding that self-insurance is not insurance. Under the Louisiana Insurance Code, insurance is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies. LSA-R.S. 22:5. Not only policies but contracts of liability insurance are covered by the Insurance Code LSA-R.S. 22:655. Budget entered into contracts of insurance with its customers whereby, for a stated premium, each customer obtained the benefit of Budget's "self-insurance." By insuring its customers' vehicles, Budget engaged in the business of insurance, became subject to the Louisiana Insurance Code, and was required to provide omnibus coverage to those using its vehicles with the express or implied permission of the named insureds.
The lease form, a printed contract of adhesion which gives the rental customer no choice of terms, violates the public policy of Louisiana which protects injured persons against damage by omnibus clause insureds as well as named insureds. In allowing giant rental companies to write insurance but restrict coverage for permissive users, this court sides against innocent victims of rental car operators for no discernable reason.
Other states have refused to enforce provisions in rental car agreements which attempt to exclude coverage for permissive users. See, for example, Metz v. Universal Underwriters Insurance Company, 10 Cal.3d 45, 513 P.2d 922, 109 Cal.Rptr. 698 (1973); Allstate Insurance Co. v. Travelers Insurance Co., 49 A.D.2d 613, 370 N.Y. S.2d 675 (1975); Financial Indemnity Co. v. Hertz Corp., 226 Cal.App.2d 689, 38 Cal. Rptr. 249 (1964) and Roth v. Old Republic Insurance Company, 269 So.2d 3 (Fla. 1972).
I respectfully dissent.
NOTES
[1] The plaintiffs mistakenly believed the lessee of the vehicle operated by Harris. On April 13, 1989, the plaintiffs' petition was amended to add Willis as a defendant and to allege an employer-employee relationship between Willis and Harris.
[2] In the earlier cases, the insurance coverage for the rental agencies was provided by an outside insurance policy which contained an omnibus clause.
[3] We note the court of appeal's conclusion was factually erroneous. The amended petition was filed after the hearing on the motion but before the order granting the motion was signed by Judge Connolly.
[4] When Jones was decided La.R.S. 22:628 provided: "No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless in writing and made a part of the policy."
[5] The Jones court also based its decision on the ambiguity of the prohibitory provisions in the rental agreement.
[6] See e.g., Lunda v. Sauer, 389 So.2d 915 (La. App. 4th Cir. 1980) (omnibus clause in rental agency's insurance policy provided coverage where the unauthorized driver was on a mission for or was using the car for the lessee); Grady v. Allstate Ins. Co., 355 So.2d 1070 (La.App. 4th Cir. 1978) (omnibus clause in rental agency's insurance policy provided coverage where lessee was a passenger in the vehicle driven by the prohibited driver); Lauer v. Dickinson, 299 So.2d 525 (La.App. 4th Cir.), writ denied, 302 So.2d 36 (La. 1974) (no omnibus coverage because unauthorized driver did not have lessee's permission).
[7] La.R.S. 32:851-32:1043. The LMVSRL includes the Compulsory Motor Vehicle Liability Security Act, as well as the state's financial responsibility laws.
[8] Pursuant to the LMVSRL, owners of motor vehicles registered in Louisiana are prospectively required to maintain proof of financial responsibility by one of four methods provided in La.R.S. 32:861(A). The LMVSRL requires individual operators of a motor vehicles to provide proof of financial responsibility only if a judgment arising from a previous motor vehicle accident in which they were found liable has not been satisfied or if they have been convicted of violating one of the major traffic laws. La. R.S. 32:871, et seq..
[9] 15 Louisiana Civil Law Treatise: Insurance Law and Practice § 50 (1986).
[10] Comment, "Omnibus Clause"Problems in Louisiana Jurisprudence, 22 La. L. Rev. 626, 626-7 (1962).
[11] Because a certificate of self-insurance is not an insurance "policy", we believe a self-insurer is not required to provide omnibus coverage in accordance with La.R.S. 32:900(B)(2) because the statutory language clearly and expressly indicates La.R.S. 32:900 applies specifically to "motor vehicle liability policie[s]." Jones v. Henry, 542 So.2d 507, 509 (La. 1989); Jordan v. Honea, 407 So.2d 503, 504 (La.App. 1st Cir. 1981), writ denied, 409 So.2d 654 (La.1982).
[12] This is not to say that self-insurers are not responsible for damage caused by the authorized use of their vehicles. Such a holding would be contrary to the general agency principles regarding liability. Clearly a self-insured employer is vicariously liable under the doctrine of respondeat superior for the negligent operation of its vehicles by its employees.
[13] Specifically, the rental contract states: "BUDGET/SEARS agrees to provide to the renter, and additional driver, liability coverage within limits of liability equal to the minimum limits required by the compulsory motor vehicle liability security law, (or so called `financial responsibility law') of the state in which the vehicle is rented."
[14] For a detailed discussion of the difference between "motor vehicle insurance policies" and "automobile insurance policies" see Comment, Compensation for Motor Vehicle Accident Victims: The Louisiana Motor Vehicle Safety Responsibility Act, 27 Tul.L.Rev. 341, 350-351 (1953) and Comment, Automobiles-Insurance-The Requirements of North Dakota's Financial Responsibility Laws are Applicable to All Automobile Liability Insurance Policies, 62 N.D.L. Rev. 407 (1986).
[15] Our determination is consistent with the approach taken by the majority of jurisdictions in the United States which have distinguished between "automobile liability policies" and "motor vehicle liability policies" and have held that voluntarily purchased "automobile liability policies" are not subject to the requirements of the financial responsibility laws of the state. See, e.g., Novak v. State Farm Mutual Automobile Ins. Co., 293 N.W.2d 452 (S.D.1980); Lewis v. Mid-Century Ins. Co., 152 Mont. 328, 449 P.2d 679 (1968); United States Fidelity and Guaranty Co. v. Walker, 329 P.2d 852 (Okla.1958); Gray v. Maryland Casualty Co., 152 F.Supp. 520 (D.C.Ill. 1957); Perkins v. Perkins, 284 S.W.2d 603 (Mo. Ct.App.1955); Hoosier Cos. Co. v. Fox, 102 F.Supp. 214 (N.D.Iowa 1952).
[16] In reaching this conclusion, we feel Boudreaux v. ABC Ins. Co., 689 F.2d 1256 (5th Cir. 1982), in which the court failed to differentiate between a voluntary "automobile liability policy" and a mandatory "motor vehicle liability policy" in holding that the insurance contract between the self-insured lessor and the lessee was deemed to include an omnibus clause under La.R.S. 32:900, was clearly erroneous as it ignored the explicit and specific statutory language of La.R.S. 32:900.
[17] La.R.S. 32:861(A).
[18] La.R.S. 32:871 et seq.
[19] We add that unlike La.R.S. 32:900(B), which requires omnibus coverage in "owner's" policies, La.R.S. 32:900(C), dealing with "operator's" policies, does not refer to or require omnibus coverage. Thus, even if the lessee was required to procure a "motor vehicle liability policy" as proof of financial responsibility, the provisions of the LMVSRL would not require such an "operator's" policy to contain an omnibus clause.
[20] The Attorney General's opinion states: "a policy of liability insurance written on a Louisiana Motor Vehicle shall have its minimal liability limits controlled by the statutory omnibus coverage provision, and the omnibus clause shall disallow enforcement of a policy provision or endorsement excluding a named driver from liability coverages." 88 Op. Att'y. Gen. 231 (1988).
[21] We stress that our decision has no effect on prior decisions in which exclusions in "motor vehicle liability policies" were found to violate La.R.S. 32:900's omnibus requirement. See, e.g., Stanfel v. Shelton, 563 So.2d 410 (La.App. 1st Cir. 1990) (policy provision in motor vehicle owner's policy which attempted to exclude coverage for vehicles "used in the course of their employment" violated statutory mandate); Rudison v. Richard, 526 So.2d 369 (La.App. 4th Cir.1988) ("automobile business" exclusion violated statutory provisions requiring compulsory omnibus coverage in all liability policies issued to motor vehicle owners). Although the lower courts in these cases failed to recognize that the liability policies in those cases were in fact "motor vehicle liability policies," the outcome of the cases is correct.
[22] The plaintiffs have entitled La.R.S. 22:655 the "Louisiana Omnibus Insurance Statute" with no apparent authority therefore. La.R.S. 22:655 is commonly referred to and recognized as the "Direct Action Statute."
[23] La. Civil Code art. 1971 provides: Parties are free to contract for any object that is lawful, possible, and determined or determinable.
[24] U.S. Const. art. I, § 10 provides: No state shall ... pass any ... Law impairing the Obligations of Contracts, ....

La. Const, art. I, § 23 provides: No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted.
[25] La.R.S. 32:1041 states in part:

Any person, firm, association or corporation licensed and engaged in the business of renting or leasing motor vehicles to be operated on the public highways shall only be required to furnish proof of financial ability to satisfy any judgment or judgments rendered against said person, firm, association or corporation in his or its capacity as owner of the said motor vehicles, and shall not be required to furnish proof of its financial responsibility to satisfy any judgment or judgments rendered against the person to whom the motor vehicle was rented or leased at the time of the accident.
[1] LSA-R.S. 32:1041 provides in part:

Any person, firm, association or corporation licensed and engaged in the business of renting or leasing motor vehicles to be operated on the public highways shall only be required to furnish proof of financial ability to satisfy any judgment or judgments rendered against said person, firm, association or corporation in his or its capacity as owner of the said motor vehicles, and shall not be required to furnish proof of its financial responsibility to satisfy any judgment or judgments rendered against the person to whom the motor vehicle was rented or leased at the time of the accident.
[2] Contrary to the view of one of my dissenting brethren, it is my view that section 32:861(A)(1)'s reference to "liability limits as defined by R.S. 32:900(B)(2)" refers to the minimum amounts of coverage (10/20/10), and does not refer to the omnibus coverage requirement of that same section.