664 So.2d 1310 (1995)
Clayton W. CHEDVILLE, through his duly appointed curator, Everett Louis Chedville, Everett Louis Chedville and Laverne Mcclendon Chedville, Individually
v.
INSURANCE COMPANY OF NORTH AMERICA, Plaquemines Parish School Board, Plaquemines Parish, Louisiana, Virginia Surety Company and Romel E. Barthelemy.
No. 95-CA-0170.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1995.
*1311 Sidney J. Angelle, Keith M. Matulich, Lobman, Carnahan and Batt, Metairie, for Appellants.
George LaMarca, Law Offices of Donald T. Giglio, New Orleans, for Appellees.
Before BARRY, BYRNES, and LANDRIEU, JJ.
BYRNES, Judge.
On October 21, 1993 the trial court granted in part a motion for summary judgment in favor of the Plaquemines Parish School Board, Romel E. Barthelemy, Insurance Company of North America, and Cigna Property & Casualty Insurance Company by awarding them reimbursement from The Roman Catholic Church for the Archdiocese of New Orleans, St. Jude Catholic School, and the Catholic Mutual Relief Society of America, of funds contributed towards settlement in the sum of $300,000.00. Attorney's fees and the costs associated with the defense of the Defendant, Romel E. Barthelemy were not awarded. The cross motion for summary judgment of The Roman Catholic Church for the Archdiocese of New Orleans, St. Jude Catholic School, and the Catholic Relief Society of America was denied. The Archdiocese, St. Jude, and Catholic Mutual appealed. Their appeal is not based on a contention that there were genuine issues of material fact.
On September 28, 1989, plaintiff Clayton W. Chedville sustained severe injuries when he was struck by a school bus driven by Romel E. Barthelemy. Prior to trial plaintiff settled his claim against the defendants for approximately $1.5 million which has been paid. CIGNA, on behalf of itself and INA, contributed $500,000.00 and Catholic Mutual contributed $400,000.00 in cash and purchased an annuity for $599,159.00 on behalf of St. Jude and the Archdiocese, but the parties reserved their rights to the have the court reapportion their contributions among themselves.
St. Jude School owned the bus along with The Roman Catholic Church of Archdiocese of New Orleans. At the time of the accident, the Plaquemines Parish School Board operated and maintained the bus and employed the driver, Romel E. Barthelemy.
It is undisputed that Barthelemy was working solely within the course and scope of his employment with the School Board at the time of the accident. At the time of the accident, the bus was being used to transport public school students.[1]
The School Board had a $1,000,000.00 liability policy with CIGNA and a $1,000,000.00 *1312 umbrella policy issued by INA. St. Jude and the Archdiocese had a certificate from The Catholic Mutual Relief Society of America, Inc. which provided an EXCESS AUTO LIABILITY ENDORSEMENT of $300,000.00 and an EXCESS LIABILITY CERTIFICATE of $10,000,000.00. The Archdiocese, St. Jude's School, and The Catholic Mutual Relief Society of America, Inc. appealed, arguing primarily that: (1) Catholic Mutual is not an insurer, but a self-insurance fund of the Roman Catholic Church; (2) that there is no statutory requirement mandating that coverage on a vehicle be considered primary to another policy covering a driver in the face of conflicting language in the policies.
The authorities cited by the trial court are not applicable to the facts of this case. LSA-R.S. 22:1406D(1)(c) which provides for the priority of coverage applies only to uninsured motorist coverage. There is no question of uninsured motorist coverage in the instant case. Comberrel v. Basford, 550 So.2d 1356 (La.App. 5 Cir.1989) is inapposite for the same reason as it is based on LSA-R.S. 22:1406D.
The Catholic Mutual "Excess Auto Liability Coverage" provides that:
PERSONS/ORGANIZATIONS COVERED
The following persons/organizations are covered under this form:
(1) The Protected Person(s) for any covered auto.
(2) Anyone else while using with your permission a covered auto you own, hire or borrow....
(3) Anyone liable for the conduct of the Protected Person(s) or permissive user described above is also covered, but only to the extent of that liability.
The CIGNA policy provides:
For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance ... [Emphasis added.]
This language quoted from the CIGNA policy is equivalent to language contained in the Aetna policy in Thomas v. Neeb-Kearney & Co., Inc., 334 So.2d 465, 466 (La.App. 4 Cir.1976): "With respect to a hired automobile or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the insured." The Thomas court specifically found that: "There is no conflict of insurance clauses in the matter before this court." In Thomas the employer of the driver of the vehicle carried the Aetna policy. The owner of the vehicle had a Liberty Mutual policy that provided that: "If the insured had other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability of all valid and collectible insurance." Id. The Thomas court concluded that: "Liberty Mutual simply has the primary policy on the owned vehicle ... Aetna has the excess coverage because as to it the truck-tractor is literally a hired or non-owned vehicle." (Emphasis added.) Id. Juan v. Harris, 279 So.2d 187 (La.1973), dealt with facts and policy provisions that were virtually identical to those in Thomas and reached the same result.
Although the CIGNA policy contained a provision equivalent to the Aetna provision in Thomas, The Catholic Mutual Excess Auto Liability Coverage contains the following "excess" language not found in the vehicle owner's Hartford policy in Thomas, nor in the equivalent Employer's policy in Juan:
If other valid and collectible coverage or insurance is available to you covering a loss also covered under this form, other than the coverage or insurance that is specifically in excess of coverage afforded by this form, the coverage afforded by this form shall be in excess of and shall not contribute with, such other coverage or insurance. Nothing herein shall be construed to make this form or the Certificate to which this form is attached subject to the terms or conditions of such other coverage or insurance. [Emphasis added.]
*1313 The Thomas and Juan decisions were based on the language contained in the conflicting policies, not upon any statutory or public policy requirement that the vehicle owner's policy be treated as necessarily providing primary coverage.
The trial court found that implicit in LSA-R.S. 32:900(B)(2) mandating omnibus coverage in auto insurance policies is an expression of public policy to the effect that the vehicle owner's policy be primary based on the following statement found in Hearty v. Harris, 574 So.2d 1234, 1237 (La.1991): "At the heart of this statutory scheme is the decision to attach the financial protection to the vehicle rather than to the operator." However, the sentence that preceded the sentence quoted from Hearty by the trial court explains the public policy behind omnibus coverage requirement as one designed to create a "comprehensive scheme for the protection of the public from the damage caused by motor vehicles." As the effectuation of this policy is not impaired where the apportionment of the loss among insurance companies does not reduce the amount available to compensate the injured parties for their injuries; and as LSA-R.S. 32:900(B)(2) is silent on the question of which coverage is primary, the trial court should have based its decision on the language of the policies. Therefore, we do not find that the Catholic Mutual excess auto coverage is primary coverage per se just because it was held by the vehicle owner.[2]
The CIGNA and INA policies contain provisions that state that under the facts of this case they are excess above any other "collectible insurance." Catholic Mutual argues that: "Because Catholic Mutual is not an `insurer,' any liability it may have must be secondary to liability of CIGNA and INA."
Catholic Mutual contends that it is not an insurer, because it merely administers a self-insurance program of the Roman Catholic Church in the United States and that St. Jude and the Archdiocese were participants in that program. It is uncontested that the only entities eligible to participate in the program are those federal tax-exempt entities of the Catholic Church listed in the annual Official Catholic Directory. Catholic Mutual contends that the "Catholic Church is the `one economic family' organization." "Insurance necessarily involves two elements: a risk of loss to which one party is subject and a shifting of that risk to another party; and distribution of risk among similarly situated persons." 44 C.J.S. Insurance Sec. 2 at 74. It is safe to assume that many and perhaps most if not all of the "tax-exempt entities of the Catholic Church" listed in the Official Catholic Directory are legally separate, distinct incorporated entities. The fact that Catholic Mutual is a not for profit company does not mean that it does not provide insurance. We find that it can best be described as a mutual insurance organization or the equivalent. The fact that the organization is not open to the public at large does not make it any less a mutual insurance organization. The fact that the risk is spread among related organizations does not negate the fact that a reallocation and spreading of the risk does in fact occur among those organizations. Catholic Mutual does not contend that each organization contributes an amount that corresponds exactly to its losses and administrative expenses. It is uncontested that St. Jude and the Archdiocese pay premiums to Catholic Mutual, regardless of how they are denominated. The Catholic Mutual "policies" read and function just like insurance policies. More importantly, we note that the Catholic Mutual Excess Auto Liability Coverage provides:
The Ultimate Net Loss payable for coverage as provided by this form shall be excess of $200,000.00. Self Insured Retention *1314 for any one accident, subject to the limit of liability as shown on the certificate declarations page....
When the Catholic Mutual "policy" states that its coverage is excess of the $200,000.00 "Self Insured Retention" it can only mean that it is providing insurance over a $200,000.00 self-insured amount. If the policy were true self-insurance there would be no reference to a "Self Insured Retention." Thus the "policy" distinguishes between an amount for which the entity is truly self-insured and the amount which is covered by Catholic Mutual.
The trial court found that there were two primary coverages, i.e., Catholic Mutual's Excess Auto Liability Coverage for $300,000.00 and CIGNA's policy. It was stipulated that CIGNA was responsible for the first $200,000.00 of plaintiff's losses which confirms the fact that its policy was providing primary coverage. The next level of coverage should be apportioned according to the formula set forth in Graves v. Traders & General Insurance Company, 252 La. 709, 214 So.2d 116 (1968), for dealing with situations such as this where to give effect to the provisions of both coverage would render neither liable, a result that is clearly not intended and contrary to public policy. Following Graves we would use a ratio of eight to three based on CIGNA's $800,000.00 of coverage remaining after it paid the first $200,000.00 for which it is solely responsible and Catholic Mutual's Excess Auto Liability Coverage of $300,000.00. This would bring the total to $1,300,000.00 thereby exhausting both the CIGNA and Catholic Mutual Excess Auto Liability Coverage, leaving $199,159.00 to apportion between the remaining INA and The Catholic Mutual Excess Liability Coverage Form.
The pertinent provisions of the Catholic Mutual Excess Liability Coverage Form provide:

COVERAGE
We agree to pay on your behalf that amount of loss and loss expense resulting from any occurrence which exceeds the amount of loss and loss expense payable by the underlying coverage as shown, but our obligation hereunder shall not exceed the limit of liability stated in Item 4 of the Excess Liability Declarations.
* * * * * *
Underlying Coverage means all certificates or policies listed in the schedule of underlying coverage, including all endorsements attached thereto, plus applicable limits of any other underlying protection (whether insurance or self-insurance including deductible) collectible by you. This definition also is intended to include any self-insured retention endorsement.
Catholic Mutual argues that its coverage only comes into play after all underlying coverage has been exhausted. Catholic Mutual argues that the underlying coverage includes the $1,000,000.00 CIGNA coverage, the $300,000.00 Catholic Mutual Excess Auto Liability Coverage and the $200,000.00 self-insured retention for a total of $1,500,000.00 which must be exhausted before the Catholic Mutual Excess Liability Coverage can be called upon. However, the $200,000.00 self-insured retention was covered by CIGNA when it agreed to be responsible for the first $200,000.00 of liability. This reduced the remaining Cigna coverage to $800,000.00, not $1,000,000.00. To allow Catholic Mutual to add the $200,000.00 already paid by CIGNA on again at the back end to bring the threshold up to $1,500,000.00 before the Catholic Mutual excess policy kicks in, instead of $1,300,000.00 would be double counting.
Thus we are still faced with the problem of apportioning coverage between INA and the Catholic Mutual Excess Coverage. The INA Commercial Umbrella Liability Form provides that:
If other valid and collectible insurance is available to the insured for a loss we cover under this policy, this policy is excess of and will not contribute to the other insurance except if the other insurance is written *1315 as excess insurance over the insurance provided by this policy. When both this insurance and the other insurance apply to a loss on the same basis, whether primary, excess, contingent, or any other basis, then we will share with that other insurance by the following method:
a. If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
b. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.
We find that both the INA and Catholic Mutual coverage are excess and therefore apply on the "same basis" as that phrase is used in the INA policy. Therefore, as INA has $1,000,000.00 of coverage and Catholic Mutual has $10,000,000.00 of coverage, Catholic Mutual according to the Graves formula must contribute $10 towards the remaining $199,159.00 of the settlement total for every $1 that INA is required to pay, i.e., Catholic Mutual must contribute $181,053.64 and INA must pay $18,105.36. The result is that Catholic Mutual is entitled to substantial reimbursement.

DECREE
For the foregoing reasons, that portion of the judgment of the trial court ordering the Roman Catholic Church for the Archdiocese of New Orleans, St. Jude Catholic School, and the Catholic Relief Society of America (Catholic Mutual) to reimburse CIGNA, et al., $300,000.00 is reversed.
It is further ordered that CIGNA reimburse Catholic Mutual, et al., $800,000.00 for funds contributed towards settlement with the plaintiff, together with legal interest from the date of settlement entered herein until paid.
It is further ordered that INA reimburse Catholic Mutual, et al., $18,105.36 for funds contributed towards settlement with the plaintiff, together with legal interest from the date of settlement entered herein until paid.
It is further ordered that St. Jude and the Archdiocese be dismissed from these proceedings.
That portion of the judgment of the trial court denying the request of CIGNA, et al., for attorney's fees and costs is affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] By motion for summary judgment St. Jude and the Archdiocese asked to be dismissed from this litigation. This request was not granted by the trial court in its judgment, and the matter was not discussed in the trial court's reasons for judgment. The record provides no basis for finding either St. Jude or the Archdiocese directly negligent or vicariously liable for the actions of the bus driver. There is no allegation that either was an insurer of the driver. They are entitled to be dismissed.
[2] Catholic Mutual counters with the policy argument that it was the negligence of the driver that caused the accident; that at the time of the accident he was employed by the School Board and was acting solely in that capacity; and that it is the better policy to hold the tortfeasor and his employer and their insurers primarily responsible, rather than the innocent owner of the vehicle. Where as in this case the implementation of such a policy would cause no reduction in recovery to the injured party, such an approach might have merit in those instances where resort to policy language and the jurisprudence provide no guidance.