JjDOUCET, Judge.
Appellant, Jennifer Breaux, appeals a decision of the trial court granting a motion for summary judgment filed by Ford Motor Company, Inc. (FMC) and Ford Motor Credit Company, Inc. (FMCC) dismissing plaintiffs suit against movers. We affirm.

FACTS

The action before us is the only surviving action of three suits filed by three plaintiffs against various defendants in connection with a motor vehicle accident which occurred October 10,1987, at the intersection of Pine and Hodges Streets in Lake Charles, Louisiana. Ms. Breaux was a guest passenger in a 1986 hMazda operated by Rochelle Petitjean and owned by Pattie Knoblock, who was also a passenger in the vehicle. As the Knoblock vehicle traversed the Pine Street intersection on Hodges, it was struck by a 1986 Ford Ranger pickup truck operated and leased by Eric Claudel, who had disregarded a stop sign on Pine Street.
The 1986 Ford Ranger, which was owned by Ford Motor Credit Company, had been leased by Mr. Claudel from Don Shetler Ford. According to the terms of the lease, Claudel was obligated to maintain an automobile liability insurance policy with limits of $100,000.00/$300,000.00 on the Ford Ranger. However, the Allstate policy purchased by Claudel only provided $10,000.00/$20,000.00 coverage. These limits were insufficient to cover plaintiffs’ damages.
Knoblock, Petitjean and Breaux all filed separate suits against Claudel and Allstate. These suits were consolidated and by way of a concursus proceeding all of plaintiffs’ claims against Claudel and Allstate (as Clau-del’s insurer) were compromised and dismissed.
By a supplemental and amended petition, Ms. Breaux alleged that Ford Motor Company and Ford Motor Credit Company were hable unto plaintiff under an agreement between Ford Motor Company, Ford Motor Credit Company, and its licensee, Don Shelter Ford, Inc., whereby Ford Motor Company and Ford Motor Credit Company agreed to provide excess liability coverage of $1 million to its licensee. This coverage was provided via a policy issued by Allstate Insurance Company. Ms. Breaux alleged that, under the Allstate policy, Mr. Claudel was an *746 omnibus insured and thus the limits of this policy were available to satisfy her claim.
FMC, FMCC and Allstate filed a motion for summary judgment denying Claudel was an omnibus insured and praying plaintiffs suit be dismissed. The trial judge granted said motion and plaintiff appeals.

j¿AW AND DISCUSSION

The sole issue that was before the trial judge and is now before us on appeal: whether the FMC Allstate policy affords any coverage for Mr. Claudel, the lessee of the Ford Ranger. After examining the record, we find the learned trial judge’s reasons for judgment to be excellent and adopt the following portion of those reasons as our own:
“The FMC Allstate policy has 14 numbered endorsements, all issued effective December 15, 1986, the same effective date of the policy itself.
“Endorsement No. 4 provides as follows:

‘CONTINGENT COVERAGE

“With respect to a Covered Auto the insurance under this policy applies to the Named Insured only and the Insurance shall be excess insurance over any other valid and collectible insurance, whether primary, excess or contingent.
‘No insurance of any nature is afforded to the lessee or sublessee, its servants, agents or employees or those using the AUTO with or without the permission, of the lessee or sublessee, or persons alleged to be legally responsible for the use of the AUTO, unless provided by statute.’ (Emphasis added)
“Endorsement No. 5 provides for ‘EXCESS LIABILITY COVERAGE AND LIMITS’ of $1,000,000.00 each accident, over and above the greater of certain listed sums, and then follows with this paragraph:
‘2. No insurance of any nature is afforded to the lessee or sublessee, its servants, agents or employees or those using the AUTO with or without the permission of the lessee or sublessee or persons alleged to be legally responsible for the use of the AUTO unless provided by statute.’ (Emphasis added)
“Defendants contend that the above quoted exclusions of coverage apply to Claudel, and, thus, no coverage is afforded under the policy. Plaintiffs focus on the ‘unless provided by statute’ clause, and urge that ... R.S. 32:861 and R.S. 32:900, along with R.S. 22:655, provide a statutory mandate for coverage.
“The term ‘motor vehicle liability policy1 is a specific statutorily defined term, and is described in |4R.S. 32:900A to mean ‘an owner’s or operator’s policy of liability insurance certified as provided in R.S. 32:898 or 899 as proof of financial responsibility ... ’ ”
“The jurisprudence as reflected in the discussion in Hearty v. Harris, 574 So.2d 1234, (La.1991), clearly distinguishes between a statutory ‘motor vehicle liability policy1 and a voluntary automobile liability policy. Only the former are affected by the mandates of R.S. 32:861 and R.S. 32:900. The FMC Allstate policy was never certified as provided in R.S. 32:898 or 32:899, while, on the other hand, the certificate of insurance noted above for the Claudel Allstate policy indicates that it was so certified.”
“The circumstance that the FMC Allstate policy was not to be used as proof of financial responsibility is further confirmed by the second paragraph of the Agreement to Provide Insurance, which provides as follows:”
T further understand that if for any reason the below described insurance is not obtained and continuously maintained, FORD MOTOR CREDIT COMPANY may, at its option, secure insurance according to the terms of my contract. I authorize FORD MOTOR CREDIT COMPANY to add the premium and related finance charge for such insurance to the contract balance, and understand that such insurance does not provide bodily injury and property damage liability insurance coverage, and does not comply with any financial responsibility or no-fault insurance laws.’ (Emphasis added)
“FMCC’s planned avoidance of the responsibility of furnishing primary insurance for the lessee is clearly sanctioned by the Safety *747 Responsibility Law encompassed in Chapter 5 of Title 32, of which R.S. 32:861 and 900 are a part. In Part V of Chapter 5, ‘Miscellaneous Provisions’, is provided R.S. 32:1041, la-belled ‘Exceptions’. The first paragraph of that section excludes the United States, the State of Louisiana, and certain other public agencies from provisions of this chapter. The second paragraph of that section provides as follows:”
ls‘Any person, firm, association or corporation licensed and engaged in the business of renting or leasing motor vehicles to be operated on the public highways shall only be required to furnish proof of financial ability to satisfy any judgment or judgments rendered against said person, firm, association or corporation in his or its capacity as owner of the said motor vehicles, and shall not be required to furnish proof of its financial ability to satisfy any judgment or judgments rendered against the person to whom the motor vehicle was rented or leased at the time of the accident.’
“Thus, it is clear that what R.S. 32:861 and 900 giveth, R.S. 32:1041 taketh away.”
“Additional rationale in support of this conclusion is found in comments of the Third Circuit cited by defendants in their memorandum of July 12, 1993, and found in the case of Delaney v. Agency Rent-A-Car, Inc., 616 So.2d 869, (La.App. 3rd Cir.1993), commencing at page 870 as follows:”
‘It is well entrenched in Louisiana law that the negligence of a lessee in the exclusive physical control of the object of the lease cannot be imputed to the lessor. Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). The exceptions to this rule recognized in Ruthardt v. Tennant, 252 La. 1041, 215 So.2d 805 (1968), i.e., the driver of the leased vehicle was on a mission for the owner or that the lessor/owner was himself negligent in allowing the lessee to use the vehicle, are not applicable herein.
‘Our brethren of the First Circuit addressed this same question in Washington v. Stephens Leasing, Inc., 540 So.2d 433 (La.App. 1st Cir.1989). In Washington, the court stated at page 435: ‘Examination of R.S. 32:861 et seq., and particularly Sections 863-865, the penalty provisions for noncompliance with insurance requirements, does not lend support to the argument that Stephens Leasing’s duty was non-delegable. On the contrary, the use throughout the statutes of the phrases “owner or lessee”, “applicant”, “owner or owner’s lessee” indicates that the intent of the Legislature was just the opposite, that the duty of obtaining and maintaining liability insurance falls upon the appropriate person in a given situation. The lease in question here, ... clearly stated that the lessee was | (¡to procure and maintain the insurance on this vehicle. Thus, the duty of complying with the statutes’ requirements on this insurance fell to the lessee ... not the lessor in this instance.’ ”
“Although Delaney, supra, involved a rental contract, the above holdings are equally applicable here. Likewise, plaintiffs urge that Hearty, supra, was inapplicable because it involved a self insured rental agency, but that is a distinction without a difference with regard to the discussion in Hearty about the difference between a statutory ‘motor vehicle liability policy’ and a ‘voluntary automobile liability policy.’ That distinction is clearly recognized in the jurisprudence quoted in Hearty, supra. Also, in footnote 14, the court refers the reader to a detailed discussion of the difference between these policies in a Tulane Law Review comment entitled ‘Compensation for Motor Vehicle Accident Victims: The Louisiana Motor Vehicle Safety Responsibility Act,’ 27 Tulane Law Review 341, 350-351 (1950).”
“Plaintiffs further urge that the Hearty case and its reference to R.S. 32:1041 have no application, because the latter statute applies to lessees and not to insurers. This, again, is a distinction without a difference. The import of the second paragraph of R.S. 32:1041 is that one engaged in leasing motor vehicles is not required to furnish proof of financial responsibility to satisfy any judgment or judgments rendered against any person to whom the motor vehicle was rented or leased. Thus, FMCC, by statute, has been relieved of the obligation to furnish *748 such proof. The court has not been referred to any statute, nor does it know of any which would require the FMC Allstate policy as written to include coverage for a lessee.”
“Plaintiffs also rely on R.S. 22:655, which calls for liabilitiy [sic] policies ‘to give protection and coverage Uto all insureds whether they are named insureds or additional insureds under the omnibus clause, ... ’ That phrase does not mandate coverage for any particular class of individuals, but simply mandates that anyone who is an insured by any definition is to be afforded coverage. By the exclusions cited above in Endorsements Nos. 4 and 5, Claudel is not included in the definition of insured under the FMC Allstate insurance policy, either as a named insured or an additional insured under an omnibus clause, but in fact, specifically falls under an exclusion. There is certainly nothing ambiguous about the referenced exclusions in Endorsements Nos. 4 and 5, and ‘... policy provisions which limit the insurer’s liability or place restrictions on policy obligations should be enforced unless they conflict with statutes or public policy ... ’ See Pareti v. Sentry Indemnity Co., 586 So.2d 417, 421 (La.1988).”
“Plaintiffs correctly cite Louisiana Farm Bureau Casualty Ins. v. Darjean, 554 So.2d 1376 (La.App. 1st Cir.1989), for the proposition that the purpose of the Compulsory Motor Vehicle Liability Security Provisions is to provide compensation for injured persons injured by the operation of an insured vehicle, and not to protect the owner or operator against liability. This court is in full agreement with that principle, as well as the law requiring just compensation for injuries incurred through the fault of another. While acknowledging that, it must also be noted that the limits required by the compulsory law are $10,000/$20,000, and that until the legislature makes a change, it is the law of this State that no motorist has an expectation of more than that amount of coverage on any car which may strike and injure him. In this instance, such compulsory insurance was available to plaintiffs, |8although it is apparently only a nominal fraction of what might be necessary to compensate the losses here. There are political and social factors at work within the legislature which result in these low limits of compulsory coverage. For this reason, the concept of uninsured motorist insurance arose. The lack of coverage in instances such as presented here is a matter for the legislature, and until it acts, this court can only interpret and apply existing law.”
“Neither R.S. 32:861 and 900, nor R.S. 22:655 mandate coverage for Claudel under the FMC Allstate policy. The policy itself by its express terms excludes Claudel.”
Accordingly, for the reasons stated the judgment of the district court is affirmed. All costs of this appeal are assessed against plaintiff-appellant, Jennifer A. Breaux.
AFFIRMED.