# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-626


**ALBERT JOHN ABSHIRE, ET AL.**

**VERSUS**

**CLINTON P. DESMOREAUX, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
ALEXANDRIA CITY COURT
PARISH OF RAPIDES, NO. 101,340
HONORABLE RICHARD ERIC STARLING, JR., CITY COURT JUDGE


**\*\*\*\*\*\*\*\*\*\***


**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**


**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Billy Howard Ezell, Judges.

**AFFIRMED IN PART; REVERSED IN PART, AND RENDERED.**

**Robert Lawrence Beck, Jr.**
**Rivers, Beck, Dalrymple & Ledet**
**P. O. Drawer 12850**
**Alexandria, LA 71315-2850**
**Telephone: (318) 445-6581**
**COUNSEL FOR:**
      **Plaintiffs/Appellees - Albert John Abshire and Holly G. Struble**

**Keith Michael Borne**
**Borne, Wilkes, L.L.P.**
**P. O. Box 4305**
**Lafayette, LA 70502-4305**
**Telephone: (337) 232-1604**
**COUNSEL FOR:**
      **Defendant/Appellant - Safeway Insurance Company of Louisiana**

**Bonita K. Preuett-Armour**
**Armour Law Firm, L.L.C.**
**P. O. Box 710**
**Alexandria, LA 71309**
**Telephone: (318) 442-6611**
**COUNSEL FOR:**
  **Secondary Defendant/Appellant - State Farm Mutual Automobile**
  **Insurance Co.**

**THIBODEAUX, Chief Judge.**

Defendant-appellant, Safeway Insurance Company (Safeway), appeals the judgment ordering it to pay compensatory and exemplary damages arising out of a car accident caused by its insured's permissive driver, Clinton Desormeaux (Mr. Desormeaux). Safeway contends that its liability coverage does not apply because its policy with the named insured, Frances Blood Desormeaux (Ms. Blood),[1] is void ab initio due to material misrepresentations she made on her application for automobile insurance. Alternatively, Safeway argues that because exemplary damages are expressly excluded from coverage by its policy, the trial court erred in holding it liable for the payment of exemplary damages.

The uninsured/underinsured motorist (UM) carrier, State Farm Mutual Automobile Insurance Company (State Farm), has answered the appeal, alleging that the trial court's judgment should be reversed because the allocation of damages erroneously resulted in it being held liable for the payment of damages that should have been paid by the primary liability insurer, Safeway. State Farm also contends that the trial court's assessment to it of the payment of exemplary damages was improper because such damages are expressly excluded from UM coverage by the terms of its policy.

For the following reasons, the judgment of the trial court is affirmed in part, reversed in part, and rendered.

I.

**ISSUES**

1.  Can the material misrepresentation defense be raised by an insurer to achieve the rescission of an

---

[1] Ms. Blood later married Mr. Desormeaux; however, they were not married at the time of the accident or at the time she procured insurance for the truck involved in the accident. For the sake of clarity, we will refer to her as Ms. Blood throughout this opinion.

insurance contract after an accident triggering the coverage has occurred?

2.    Did Safeway satisfy its burden of establishing that its insured made material misrepresentations on her application of automobile insurance?

3.    Did the trial court erroneously assess exemplary damages to the primary liability and UM insurance carriers?

4.    Did the trial court misallocate damages, resulting in a forced exhaustion of the limits of the primary liability insurance carrier's policy and a premature allocation of damages to the UM carrier?

II.

## FACTUAL BACKGROUND

On the night of September 17, 2004, Mr. Desormeaux struck the rear of a pickup truck occupied by Holly Struble (Ms. Struble), the truck's owner, and her friend, Albert Abshire (Mr. Abshire). Mr. Desormeaux was also driving a pickup truck. The truck was titled to his girlfriend, Ms. Blood, and insured in her name only. Mr. Desormeaux fled the scene because he had been drinking; however, he was followed by the couple and apprehended by the Alexandria City Police a short time later. Mr. Desormeaux did not have a driver's license at the time of the accident as a result of a prior traffic offense and license suspension. He was arrested and ultimately pled guilty to multiple charges, including Driving While Intoxicated (DWI).

Mr. Abshire and Ms. Struble subsequently filed a suit for damages against Mr. Desormeaux and Safeway, the liability insurer of the vehicle that he was driving at the time of the accident. The plaintiffs also sued State Farm, the UM carrier for Ms. Struble's truck. In response to the lawsuit, Safeway alleged that its policy was void ab initio and did not provide liability coverage for the accident

because of material misrepresentations made by Ms. Blood when she applied for coverage for the truck in January of 2004. Safeway alleged that in response to questions posed on its application for automobile insurance, Ms. Blood intentionally failed to disclose that Mr. Desormeaux, who she had been cohabitating with for six years at that time, was a resident of her household and that he would be an operator of the pickup truck. Safeway asserted that Ms. Blood intentionally omitted this information because she knew that his past driving offenses and lack of a driver's license would negatively affect the ability to get coverage for the vehicle. Safeway argued that if Ms. Blood had disclosed that Mr. Desormeaux was a member of her household and that he would be an operator of the truck that she sought to have insured, it would not have issued the automobile policy. Therefore, Safeway sought to have the policy declared void ab initio pursuant to La.R.S. 22:619.[2]

---

[2]**§ 619. Warranties and misrepresentations in negotiation; applications**

A. Except as provided in Subsection B of this Section and R.S. 22:692, and R.S. 22:692.1, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.

B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

The plaintiffs, in turn, argued that La.R.S. 22:655(D)[3] and La.R.S. 32:900(F)(1)[4] prevented Safeway from asserting the misrepresentation defense after the accident's occurrence. They argued that allowing an insurer to seek the rescission of a policy using this defense after a loss has occurred results in the evisceration of Louisiana's compulsory liability insurance laws, leaving injured third parties vulnerable.

The trial court found that Mr. Desormeaux was solely at fault for the accident based upon evidence introduced at trial that he was driving while intoxicated when he struck the plaintiffs' vehicle. This finding is not challenged on appeal. The trial court also rejected Safeway's material misrepresentation defense as a basis for rescinding the policy. The court agreed with the plaintiffs' arguments and held that although misrepresentations may have been made by Ms. Blood, any efforts to void the policy were only available to Safeway prior to the accident. The trial court stated

---

[3]**§655. Liability policy; insolvency or bankruptcy of insured and inability to effect service of citation or other process; direct action against insurer**

. . . .

D. It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons and their survivors or heirs to whom the insured is liable; and, that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy.

[4]**§ 900. "Motor Vehicle Liability Policy" defined**

. . . .

F. Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

(1) The liability of the insurance carrier with respect to the insurance required by this Chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be cancelled or annulled as to such liability by an agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy; . . .

that this conclusion was "consistent with the public policy of [La.R.S.] 32:900 and [La.R.S.] 22:655."

The trial court awarded the following compensatory damages for the injuries alleged to have been suffered by the plaintiffs as a result of the accident: general damages to Mr. Abshire—$1,500; general damages to Ms. Struble—$14,000; and medical expenses to Mrs. Struble—$1,176.50. The trial court also awarded exemplary damages, pursuant to La.Civ.Code art. 2315.4,[5] in the amounts of $1,500 to Mr. Abshire and $5,000 to Ms. Struble. In summary, Mr. Abshire was awarded damages totaling, $3,000.00, and Ms. Struble was awarded damages, totaling $20,176.50.

The trial court recognized that Safeway's and State Farm's coverages each had payment limits of $10,000 per person and $20,000 per accident and that State Farm had already tendered a $2,000 payment to Ms. Struble prior to trial. The trial court, consequently, rendered a judgment stating that Safeway and Mr. Desormeaux were jointly and solidarily liable for the payment of the $3,000.00 award to Mr. Abshire. The trial court then held Safeway and Mr. Desormeaux jointly and solidarily liable to Ms. Struble for $10,000.00, as this was the maximum amount of coverage available to Ms. Struble under Safeway's policy. State Farm was held jointly and solidarily liable with Mr. Desormeaux for the payment of $8,000.00 to Ms. Struble, which absorbed the remaining coverage available to her under the UM policy. The court then held Mr. Desormeaux solely liable for the payment of the remaining $2,176.50 of Ms. Struble's damages. The court did not distinguish

---

[5]**Art. 2315.4.  Additional damages; intoxicated defendant**

In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.

between compensatory and exemplary damages when apportioning liability for the payment of the damages awarded.

Safeway has appealed and now asserts that the trial court erred in ruling that the defense of material misrepresentation cannot be asserted after a loss has occurred. Safeway also contends that it carried its burden of proof and established that Ms. Blood intentionally made misrepresentations that were material to its decision to grant coverage. Alternatively, Safeway argues that the trial court erred in holding it jointly and solidarily liable with Mr. Desormeaux for the payment of any exemplary damages because its policy expressly excludes exemplary damages from coverage.

State Farm has answered the appeal. It also challenges the trial court's allocation of damages. Specifically, State Farm contends that the trial court failed to exhaust the limits of Safeway's liability policy prior to assessing damages to it. It asserts that the trial court should have exhausted Safeway's policy limits that were available to each plaintiff for the payment of compensatory damages and, then, should have ordered payment of any remaining compensatory damages by State Farm. State Farm, contends that the trial court's failure to do this resulted in it—the UM carrier—being ordered to pay compensatory damages that the primary liability policy was able to cover. State Farm also seeks to have the assessment of exemplary damages to it reversed, arguing that exemplary damages are expressly excluded by its policy.

## LAW AND DISCUSSION

**Material Misrepresentations**

**1.     Can the material misrepresentation defense of La.R.S. 22:619 be asserted to rescind an automobile liability policy after a loss has occurred?**

The question of whether the trial court properly ruled that the material misrepresentation defense could not be raised after the occurrence of the car accident giving rise to the loss occurred is a legal question, requiring a de novo review by this court to determine whether the trial court's conclusion was legally correct or incorrect. *Foster v. ConAgra Poultry Co.*, 95-793 (La.App. 3 Cir. 2/14/96), 670 So.2d 471, *writ denied,* 96-0645 (La. 4/26/96), 672 So.2d 674. We find that the trial court did commit legal error in ruling that the material misrepresentation defense cannot be asserted after an accident has occurred. Louisiana jurisprudence contains many examples in which the material misrepresentation defense has been raised as a defense to a liability claim after an accident has occurred. *See Tabchouri v. Progressive Ins. Co.*, 00-134 (La.App. 3 Cir. 12/6/00), 775 So.2d 1127; *Pryor v. State Farm Mut Auto. Ins. Co.*, 663 So.2d 112 (La.App. 3 Cir. 8/30/95); *Jamshidi v. Shelter Mut. Ins. Co.*, 471 So.2d 1141 (La.App. 3 Cir. 1985). In fact, this state's supreme court and virtually all of this state's circuits have customarily reviewed cases in which the application of the material misrepresentation defense set forth in La.R.S. 22:619 was raised by an insurer after the date of loss, and in many instances, the courts have affirmed or found that the facts justified the rescission of the purported coverage because of misrepresentations that were made at the time the insurance was procured. *See Coleman v. Occidental Life Ins. Co. of N. America.*, 418 So.2d 645 (La.1982); *Cousin v. Page*, 372 So.2d 1231 (La.1979); *Gulf Wide Towing, Inc. v. Associated Ins. Managers, Inc.*, 563 So.2d 432 (La.App. 1 Cir. 1990), *writ denied*, 567 So.2d 107

(La.1990); *Benton v. Shelter Mut. Ins. Co.*, 550 So.2d 832 (La.App. 2 Cir. 1989); *Bieser v. American Deposit Ins. Co.*, 95-555 (La.App. 5 Cir. 12/13/95), 666 So.2d 1158.

In addition, we recognize that the particular question of whether this defense is barred after an accident has occurred has been addressed by the appellate courts before and agree that La.R.S. 32:900(F)(1) does not bar the assertion of this defense after a potentially covered loss has occurred. *See Kennedy v. Audubon Ins. Co.*, 82 So.2d 91 (La.App. 1 Cir. 1955); *Grain Dealers Mut. Ins. Co. v. Miller*, 142 So.2d 458 (La.App. 3 Cir. 1962). The *Kennedy* and *Grain* cases held that La.R.S. 32:900(F)(1) does not prevent the rescission of an automobile liability policy which has not been certified as a "Motor Vehicle Liability Policy,"[6] for the purpose of serving as proof of financial responsibility under the Motor Vehicle Safety Responsibility Law (La.R.S. 32:851, et seq.). This court has previously recognized this distinction and has also held that La.R.S. 32:900 does not necessarily apply to all automobile liability insurance policies. *See Breaux v. Claudel*, 93-1580 (La.App. 3 Cir. 6/1/94), 640 So.2d 744. This distinction was explained further in *Hearty v. Harris*, 574 So.2d 1234, 1239 (La.1991):

> A. Applicability of La.R.S. 32:900
>
> . . . .
>
> The plaintiffs fail to discern the distinction between a 'motor vehicle liability policy' and an 'automobile liability policy.' The term "motor vehicle liability policy"

---

[6]**§ 900. "Motor Vehicle Liability Policy" defined**

A. A "Motor Vehicle Liability Policy" as said term is used in this Chapter, shall mean an owner's or an operator's policy of liability insurance, certified as provided in R.S. 32:898 or 32:899 as proof of financial responsibility, and issued except as otherwise provided in R.S. 32:899, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.

is defined by La.R.S. 32:900(A) as 'an owner's or an operator's policy of liability insurance, certified as provided in R.S. 32:898 or 32:899 as proof of financial responsibility, and issued . . . by an insurance carrier duly authorized to transact business in this state. . . .' By purchasing a 'motor vehicle liability policy' an owner or operator satisfies the requirements of the LMVSRL. In contrast, an 'automobile liability policy' is a voluntary policy which has not been certified as proof of a motorist's financial responsibility and does not therefore satisfy the requirements of the LMVSRL.

There is no proof in the record that Safeway's policy was certified as a "Motor Vehicle Liability Policy" for purposes of La.R.S. 32:856, et seq.

Additionally, we interpret La.R.S. 32:900 as that which intends to prevent collusion between an insurer and insured. It is not intended, in every instance, to limit the assertion of the misrepresentation defense to the time period prior to an accident's occurrence. Insurers must rely on the representations and warranties provided to them by insureds and typically do not become aware of prior misrepresentations until after a loss has occurred and a claim is pending; therefore, the application of La.R.S. 32:900(F)(1) as urged by the plaintiffs would severely restrict an insurer's ability to protect itself from such unsavory practices. We do not believe this was the legislature's intent.

Accordingly, we find that the trial court legally erred in ruling that Safeway was precluded from raising the material misrepresentation defense set forth in La.R.S. 22:619, simply because a potentially covered loss had occurred. Because we owe no deference to any subsequent factual findings made by the trial court because of this error, we must undertake a de novo review of the record as to whether Safeway carried its burden of proof on the issue of whether Ms. Blood made material misrepresentations sufficient to rescind the automobile policy. *Roberts v. Hartford*

*Fire Ins. Co.*, 05-1178 (La.App. 3 Cir. 4/5/06), 926 So.2d 121, *writ denied*, 06-1056 (La. 6/23/06), 930 So.2d 984.

**2. Did Safeway prove that material misrepresentations, justifying rescission of the policy, were made when the insurance was procured?**

As stated by the supreme court in *Coleman*, 418 So.2d 645 (citations omitted), "[t]he statute [La.R.S. 22:619] requires that a false statement bars recovery only if it is made with the intent to deceive or it materially affects the risk. Louisiana jurisprudence requires both factors." The insurer raising this defense bears the burden of proof. *Id.* (citing *Cousin,* 372 So.2d 1231).

The intent to deceive component is "determined from the surrounding circumstances, indicating the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality." *Tabchouri*, 775 So.2d at 1129 (citing *Cousin,* 372 So.2d 1231). A misstatement is "material" pursuant to La.R.S. 22:619, if the truth would have resulted in the insurer not issuing the policy of insurance or issuing the policy at a higher rate. *Pryor*, 663 So.2d 112; *Irving v. U.S. Fidelity & Guar. Co.*, 606 So.2d 1365 (La.App. 2 Cir. 1992). We do not find that Safeway carried its burden of proving that the misrepresentations were material or that Ms. Blood intended to deceive the insurance company in order to gain coverage for the vehicle.

Safeway submitted the affidavit of its litigation supervisor, Lisa Guidry, in efforts to establish the materiality of the misrepresentations made by Ms. Blood—that no other person of licensed age lived at her residence and that there were no other operators of the truck that she was seeking to insure. However, Ms. Guidry's affidavit stated that "if Safeway Insurance Company of Louisiana had been

aware that Clinton P. Desormeaux (an unlicensed driver at the time of the application for insurance due to a license suspension) was the actual owner of the 1992 Chevrolet 1500 pickup truck, and was the principal operator of this vehicle, Safeway would not have written the policy." We find that Ms. Guidry's attestations do not address the materiality of the actual misrepresentations at issue, and that she has based her attestations on facts that were not established at the trial of this matter.

Specifically, the record establishes that on January 30, 2004, the then twenty-three year old Ms. Blood met with an insurance agent alone to procure automobile insurance for the 1992 Chevrolet pickup truck that was later involved in the September 17, 2004, accident at issue. Ms. Blood has an eighth grade education. The vehicle was titled in her name; however, she and Clinton had shared a household for approximately six years and had purchased multiple vehicles together that were used by them jointly. The pickup truck at issue in this case was no different. Ms. Blood and Mr. Desormeaux both testified at trial that the truck at issue was titled in her name only. No contradictory evidence was produced to negate this assertion. In addition, they testified that they both drove the pickup truck, equally sharing its use. No evidence is in the record to contradict this.

Moreover, Ms. Blood testified as to her perception that she was not being deceitful with the insurance company because she was seeking to insure the vehicle only in her name:

> Q. Now you testified earlier that because Clinton didn't have a driver's license that you knew he couldn't get insurance, right?
>
> A. Yes m'am.
>
> Q. But did you still think that because you had a driver's license that you could get insurance for him?

11

A. Yes m'am.

Q. So you didn't think there was a problem with you going in to [sic] the agency and as long as you paid money that because you had this license that you could get insurance that covered you and him?

A. Yes m'am.

Q. You didn't see anything wrong with that did you?

A. No m'am.

Q. Did you think that you were in any way deceiving or being deceitful with an insurance company?

A. No m'am.

. . .

Q. Cause you, did you think that because you were paying seven hundred and twenty two dollars for two vehicles to this agency that you and anybody who operated your vehicle that you gave permission to was gonna have coverage.

A. Yes m'am.

The supreme court in *Cousin*, 372 So.2d 1231, explained that intent to deceive is determined from the circumstances surrounding not only the insured's knowledge of the falsity of his or her representations, but is also determined from the insured's recognition of the materiality of those representations. We do not find that Safeway carried its burden of proving that Ms. Blood truly recognized the purported materiality of her misrepresentations. Therefore, we find that Safeway did not carry its burden of establishing material misrepresentations that would support the rescission of its automobile policy pursuant to La.R.S. 22:619.

**Allocation of Damages**

The issue of whether Mr. Desormeaux was covered by the policy, absent any challenges to the validity of the policy, was not raised at trial or on appeal.

12

Consequently, we need not address that issue, and move directly to consideration of the court's allocation of damages among the defendants.

Mr. Abshire suffered soreness and stiffness in the neck and upper back for approximately two weeks after the accident. A few days after the accident occurred, Ms. Struble, who was riding on the passenger side of the truck, sought medical treatment for pain and stiffness in her right arm that arose after she hit it on the armrest of the vehicle's door during the accident. At the time of trial approximately two years later, Ms. Struble testified that she still suffered from recurrent pain and stiffness in her right arm. The quantum of the awards to the plaintiffs has not been challenged on appeal.

However, Safeway, alternatively, and State Farm, in its answer to Safeway's appeal, both seek review of the trial court's allocation of damages. Safeway contends that its policy expressly excludes exemplary damages and, therefore, argues that it should not have been held jointly and solidarily liable with Mr. Desormeaux for the payment of the exemplary award of $1,500.00 to Mr. Abshire. State Farm, who asserts that its policy also expressly excludes exemplary damages, argues that the trial court's allocation was improper because it resulted in State Farm, as the UM carrier, being charged with satisfying the payment of compensatory damages that were compensable under Safeway's policy. In other words, State Farm argues that the trial court's allocation did not properly allow for the primary policy's limits to be exhausted before applying UM coverage.

Specifically, State Farm asserts that the trial court should have applied the limits of Safeway's $10,000 per person/$20,000 per accident liability coverage to pay the total of Mr. Abshire's general damages, totaling $1,500.00. Next, it suggests that the trial court should have ordered Safeway to tender its policy limit of

13

$10,000.00 to Ms. Struble as compensation towards her $14,000.00 general damage award. State Farm asserts that its UM coverage should have then been responsible for covering the remaining $4,000.00 of Ms. Struble's compensatory damages and her medical expenses of $1,176.50. Considering its credit for the pretrial payment of $2,000.00 to Ms. Struble, State Farm contends that the judgment against it should have totaled only $3,176.50 rather than $8,000.00. Both State Farm and Safeway argue that Mr. Desormeaux should have been held solely liable for the payment of all of the exemplary damages awarded.

We agree with these arguments. The trial court abused its discretion in the allocation of damages between the parties. In this case, the trial court's allocation erroneously overlooked the express rejections of the payment of exemplary damages in both policies[7]. Moreover, the trial court's allocation of damages has yielded a

---

[7]The Safeway policy's exemplary damages exclusion states:

**PART 1 — LIABILITY**

**A–Bodily Injury Liability; B–Property Damage Liability.**

. . . .

**Exclusions.** This policy does not apply under Part 1:

. . . .

    (o)    regardless of any other provision of this policy, this policy does not provide for the payment of punitive or exemplary damages.

The State Farm policy excludes exemplary damages as follows:

**SECTION III — UNINSURED MOTOR VEHICLE — COVERAGE U, "ECONOMIC-ONLY" UNINSURED MOTOR VEHICLE — COVERAGE UEO AND UNINSURED MOTOR VEHICLE PROPERTY DAMAGES — COVERAGE U1**

**UNINSURED MOTOR VEHICLE – COVERAGE U**

. . . .

We will pay nonpunitive damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **uninsured motor vehicle**.

14

result that is contrary to the intent of UM coverage in this State because it did not fully exhaust the limits of the primary carrier before accessing the UM carrier's limits. *See* La.R.S. 22:680(1)(a)(i).[8] In a similar factual scenario, the first circuit addressed this issue and explained:

> The legislative aim of the uninsured motorist statute is to promote full recovery for damages suffered by innocent automobile accident victims by making uninsured motorist coverage available for their benefit as primary protection when the tortfeasor is without insurance and as additional or excess coverage when he is inadequately insured. *Hoefly v. Government Employees Ins. Co.*, 418 So.2d 575, 578 (La.1982). Punitive damages do not provide compensation for bodily injury; rather,

---

. . . .

**When Coverages U and UEO Do Not Apply**

THERE IS NO COVERAGE:

. . . .

3.　　FOR PUNITIVE OR EXEMPLARY DAMAGES.

[8]§ 680.　Uninsured motorist coverage

(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover *nonpunitive damages* from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900, unless economic-only coverage is selected as authorized herein. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy when the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates. *The coverage provided under this Section may exclude coverage for punitive or exemplary damages by the terms of the policy or contract.* Insurers may also make available, at a reduced premium, the coverage provided under this Section with an exclusion for all noneconomic loss. This coverage shall be known as "economic-only" uninsured motorist coverage. Noneconomic loss means any loss other than economic loss and includes but is not limited to pain, suffering, inconvenience, mental anguish, and other noneconomic damages otherwise recoverable under the laws of this state.

(Emphasis added).

15

> compensatory damages compensate an injured party for the injury sustained by replacing the loss caused by the injury. Exemplary or punitive damages are awarded to the plaintiff over and above compensatory damages and are intended to punish the defendant or make an example of him in order to deter any such future conduct. *See* BLACK'S LAW DICTIONARY 352 (5TH ed.1979).
>
> We believe it is contrary to the intent of the law to ignore the express exclusion for punitive damages in the State Farm policy and allow plaintiff to recover under that policy due to a forced exhaustion of the underlying limits by the punitive damage award. We feel that a compensatory damage award should be satisfied first, by exhausting the primary policy. Then punitive damages, which are awarded over and above compensatory damages, would be satisfied under the excess UM policy. In this case, that excess policy expressly excludes punitive damages. We do not believe that the purpose and intent of the UM statute is served by specifically allocating damages so as to achieve the exhaustion of the underlying policy limits by a punitive damage award. Moreover, requiring payment under a UM policy under this factual scenario neither punishes nor deters the tortfeasor and, thus, does not serve the purpose behind an award of punitive damages.

*Malbreaugh v. CNA Reinsurance Co.*, 2003-2088, p. 4 ( La.App. 1 Cir. 9/17/04), 887 So.2d 496-97. (Footnote omitted).

We agree with this reasoning and apply it to the facts of this case. We, too, find that the trial court abused its discretion in allowing recovery of compensatory damages from the UM carrier State Farm, prior to exhausting Safeway's policy limits for the payment of these damages. Moreover, we find that the polices of both Safeway and State Farm excluded exemplary damages. Accordingly, we reverse the trial court's allocation of damages and re-allocate damages as follows:

Safeway and Mr. Desormeaux are jointly and in solido liable for $1,500.00 in general damages to Mr. Abshire;

16

Mr. Desormeaux is solely liable for $1,500.00 in exemplary damages to Mr. Abshire;

Safeway and Mr. Desormeaux are jointly and in solido liable for $10,000.00 in general damages to Ms. Struble;

State Farm and Mr. Desormeaux are jointly and in solido liable for $1,176.50 in medical expenses and $2,000.00 in general damages to Ms. Struble (recognizing the $2,000.00 credit to State Farm for its pretrial payment of that amount to Ms. Struble); and

Mr. Desormeaux is solely liable for $5,000.00 in exemplary damages to Ms. Struble.

IV.

**CONCLUSION**

For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and rendered. Defendants-appellants, Safeway Insurance Company of Louisiana and Clinton P. Desormeaux are liable, jointly and in solido, for general damages to plaintiff-appellee, Albert John Abshire, in the amount of $1,500.00, and $10,000.00 in general damages to plaintiff-appellee, Holly G. Struble. Defendant-Appellant-Appellee, State Farm Mutual Automobile Insurance Company and Clinton P. Desormeaux are liable, jointly and in solido, for the payment of general damages in the amount of $2,000.00 to Holly G. Struble and $1,176.50 in medical expenses to Holly G. Struble. Clinton P. Desormeaux is solely liable for the payment of exemplary damages in the amount of $1,500.00 to Albert John Abshire and $5,000.00 to Holly G. Struble.

Costs of this appeal are assessed one-half each to defendants-appellants, Safeway Insurance Company of Louisiana and Clinton P. Desormeaux, and secondary defendant-appellant, State Farm Mutual Automobile Insurance Company.

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**