DANIEL L. DYSART, Judge.
 

 | plaintiffs, Robert and Janet Mantón, appeal the grant of a partial summary judgment in favor of defendant, Westchester Surplus Lines Insurance Company. For the following reasons, we affirm the judgment of the trial court.
 

 FACTS AND PROCEDURAL HISTORY:
 

 Robert Mantón was rear-ended at a red light by a vehicle being driven by defendant, Melvin Pepp, Jr., who, at the time of the accident, was in the course and scope of his employment with defendant
 
 [1]
 
 , The Audubon Institute (“Audubon”). Audubon was insured under a primary insurance policy issued by Travelers Indemnity Company of America (“Travelers”), and an excess policy issued by Westchester Surplus Lines Insurance Company (“Westches-ter”). The Travelers policy provided coverage to Audubon and Pepp up to $1 million. The policy contained no exclusion for punitive damages. The Westchester policy provided an additional $25 million in coverage after the policy limits of the primary Travelers ^policy were exhausted. The Westchester policy contained an exclusion for punitive damages.
 

 Plaintiffs settled with Pepp, Audubon and Travelers for $750,000
 
 [2]
 
 . The confidential settlement agreement, which was obtained by Westchester through discovery and entered into the record, contains no language to indicate that any portion of the $750,000 was to be considered compensation to the plaintiffs for punitive damages.
 

 Counsel for plaintiffs sent a letter on June 24, 2009, to counsel for Audubon
 
 *328
 
 transmitting the settlement documents signed by the plaintiffs, with copies to the other settling defendants. The letter stated in part:
 

 I wanted to confirm our position regarding this settlement and remaining claims. During the mediation and in subsequent discussions with the mediator which ultimately resulted in this settlement, we conveyed our position that since the Traveler’s policy covered punitive damages, the settlement with Traveler’s had to include that portion of the claim up to the $1,000,000.00 policy limit. Depending on the amount ultimately obtained for punitive damages, it would be covered in whole or in part by the settlement with Travelers, since the West-chestire [sic] policy excludes punitive damages. While I know Travelers was uncomfortable including language in the release that reflected this position, I felt it best to memorialize our position in writing so there would be no question as to what our position is in this regard.
 

 Upon learning of plaintiffs’ position with regard to the lawsuit against it, Westches-ter filed the subject motion for partial summary judgment. Westchester moved to have the trial court declare improper plaintiffs’ plan to claim that punitive damages were recovered from the Travelers’ policy, thereby allowing plaintiffs to give Westchester credit for less than the full primary limits of the Travelers’ policy.
 

 1 sAfter a hearing, the trial court granted Westchester’s motion for partial summary judgment. The judgment was designated as a final, appealable judgment, but no reasons for the certification. This appeal followed.
 

 LAW AND ANALYSIS:
 

 Appellate courts review summary judgments
 
 de novo,
 
 using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, and in the light most favorable to the non-movant.
 
 Yokum v. 615 Bourbon Street, L.L.C.,
 
 07-1785, p. 25 (La.2/26/08), 977 So.2d 859, 876;
 
 Suire v. Lafayette City-Parish Gov’t,
 
 04-1459, p. 11 (La.4/12/05), 907 So.2d 37, 48. It is well-settled that summary judgment procedure, as set forth in Louisiana Code of Civil Procedure art. 966, is designed to secure the just, speedy, and inexpensive determination of actions. La.Code Civ. Proc. art. 966 A(2). Summary judgment shall be rendered if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. La.Code Civ. Proc. art. 966 B. A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute.
 
 Yokum,
 
 07-1785, p. 25, 977 So.2d at 876;
 
 Hines v. Garrett,
 
 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765
 
 (citing Smith v. Our Lady of the Lake Hosp., Inc.,
 
 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751). A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate.
 
 Id.
 
 Additionally, as in this case, where the district court does not give reasons for certifying a judgment as final and appealable under La. Civ.Code art. 1915, the appellate court must review the decision to do so
 
 de novo. R.J. Messinger, Inc. v. Rosenblum,
 
 04-1664, pp. 13-14 (La.3/2/05), 894 So.2d 1113, 1122.
 

 |4In their first assignment of error, plaintiffs argue that the trial court erred in granting Westchester’s summary judgment because the very nature of the dispute required the trial court to give an advisory opinion. Put another way, the matter was not ripe for adjudication. Plaintiffs contend that because punitive
 
 *329
 
 damages have not been awarded (the case has not yet gone to trial), the trial court is merely speculating that punitive damages might be awarded, and by its ruling is precluding plaintiffs from recovering punitive damages.
 

 Westchester contends that the plaintiffs’ “scheme” to deprive it of the full credit of $1 million afforded under the primary policy is contrary to law. According to Westchester, the letter sent by plaintiffs’ counsel to counsel for Audubon Institute, indicates that plaintiffs’ intended to claim that punitive damages should be deducted first from the primary policy. Any balance remaining of the $1 million policy limits would then be allocated to compensatory damages. This would allow plaintiffs to recover a greater amount from Westchester. In doing so, plaintiffs would deprive Westchester of the full credit for the underlying $1 million Travelers’ policy.
 

 The settlement agreement between plaintiffs’ and Audubon, its employee, and Travelers states that the “Agreement is an integrated agreement, containing the entire understanding among the parties, ... and, except as set forth in this Agreement, no representations, warranties, or promises have been made or relied upon by the parties to this Agreement. This Agreement shall prevail over prior communications between the parties or their representatives regarding the matters contained herein, whether written or oral.” (emphasis added.) Thus, the letter sent by plaintiffs’ counsel to counsel for Audubon, transmitting the settlement documents signed by plaintiffs’ and their counsel, can have no effect.
 

 | sWestchester analogizes the present case to ones involving uninsured/underin-sured motorist coverage. The basic premise established in those cases is that a plaintiff must establish his entitlement to compensatory damages, and, most importantly, those damages must exhaust the underlying limits of the primary policy, before he can recover from an excess carrier.
 
 See Abshire v. Desmoreaux,
 
 07-626 (La.App. 3 Cir. 11/7/07), 970 So.2d 1188;
 
 Malbreaugh v. CNA Reinsurance Co.,
 
 03-2088 (La.App. 1 Cir. 9/17/04), 887 So.2d 494;
 
 Medice v. Ruiz,
 
 02-0894 (La.App. 4 Cir. 2/5/03), 841 So.2d 842.
 

 We agree with this rationale. The
 
 Ab-shire, Malbreaugh
 
 and
 
 Medice
 
 cases are clear that the underlying insurance policy limits must first be exhausted by application of compensatory damages before punitive damages may be applied. Plaintiffs argue that the cited cases are distinguishable because this case does not involve automobile insurance. However, in our view, the premise is the same: uninsured/underinsured coverage does not apply until the primary policy is exhausted, and in this case, excess insurance coverage does not apply until primary coverage is exhausted. We find no merit to plaintiffs’ argument.
 

 Plaintiffs’ second assignment of error is that the trial court erred in prohibiting them from presenting any evidence of punitive damages to the jury and having the jury or trial court then allocate an amount of such damages to the underlying Travelers’ policy that covered such damages.
 

 First, we do not 'agree that the trial court’s ruling precludes plaintiffs’ from seeking punitive damages. This case can proceed to trial and a determination of damages, compensatory and/or punitive, can be made; the partial summary judgment will not affect the adjudication of damages. The complained of | (judgment makes no mention of presentation of evidence. Clearly, if plaintiffs wish to present evidence of punitive damages, they are free to do so.
 

 
 *330
 
 Second, the prohibition of which plaintiffs’ speak, if indeed any exists, was created by plaintiffs’ settlement with Travelers, the insurer whose policy provided for punitive damages. Should the trier-of-fact make an award of punitive damages, it is plaintiffs’ actions that will preclude monetary recovery for those damages, not the trial court’s grant of summary judgment.
 

 CONCLUSION:
 

 After a
 
 de novo
 
 review, this Court concludes that summary judgment in favor of Westchester was appropriate. Thus, for the reasons assigned, we affirm the judgment of the trial court.
 

 AFFIRMED
 

 [1]
 

 . Mr. Pepp was charged and pled guilty to driving while under the influence in connection with the subject accident.
 

 [2]
 

 . The Louisiana Workers Compensation Corporation ("LWCC”) intervened in the lawsuit and was a party to the settlement agreement.